RAGONE, APPELLEE, *v.* VITALI & BELTRAMI, JR., INC.,
APPELLANT.

[Cite as Ragone v. Vitali & Beltrami, Jr., Inc. (1975),
42 Ohio St. 2d 161.]

162

(No. 74-178—Decided April 30, 1975.)

164

*Messrs. Savage, Zito & O'Malley* and *Mr. Walter A. Savage*, for appellee.

*Messrs. Hauxhurst, Sharp, Mollison & Gallagher* and *Mr. Burt Fulton*, for appellant.

O'NEILL, C. J. The issues presented in this appeal, as reflected in appellant's propositions of law, are that the trial court erred: (1) In refusing to submit to the jury the interrogatories directed to appellant's negligence; (2) in refusing to instruct the jury on the "loaned servant" doctrine; and, (3) in giving consideration to the testimony of an expert witness, who testified as to the procedure to be used in operating the pumper, where the expert failed to testify that the method of operation of the pumper used by appellant's employee was "not in conformity with the standards of the industry."

The record shows that the trial court's refusal to submit appellant's interrogatories was based on the court's opinion that the court's instructions to the jury covered the subject, and that submission of both sets of interrogatories "would confuse the jury."

Civ. R. 49(B) reads:

"The court shall submit written interrogatories to the jury, together with appropriate forms for a general verdict, upon request of any party prior to the commence-

ment of argument. Counsel shall submit the proposed interrogatories to the court and to opposing counsel at such time, but the interrogatories shall be submitted to the jury in the form that the court approves. The interrogatories may be directed to one or more determinative issues whether issues of fact or mixed issues of fact and law.

"The court shall give such explanation or instruction as may be necessary to enable the jury both to make answers to the interrogatories and to render a general verdict, and the court shall direct the jury both to make written answers and to render a general verdict.

"When the general verdict and the answers are consistent, the appropriate judgment upon the verdict and answers shall be entered pursuant to Rule 58. When one or more of the answers is inconsistent with the general verdict, judgment may be entered pursuant to Rule 58 in accordance with the answers, notwithstanding the general verdict, or the court may return the jury for further consideration of its answers and verdict or may order a new trial."

The wording of Civ. R. 49(B), that the "court *shall* submit written interrogatories * * * upon request of any party," is mandatory in character and leaves no discretion in the trial court on the question of submission, upon request, of proper interrogatories to the jury. The rule, however, reposes discretion in the court to pass upon the content of requested interrogatories as they "shall be submitted to the jury in the form that the court approves."

The Court of Appeals recognized the effect of the wording of Civ. R. 49(B), in its opinion, by stating:

"* * * [T]he use of the words the 'court shall' in Civ. R. 49(B) requires the trial judge to test the general verdict by the submission of interrogatories appropriate and proper under all the circumstances. The rule does not render the trial judge a mere conduit who must submit all interrogatories counsel may propose. Authority is still vested in the judge to control the substance and form of the questions, and if the interrogatories are not based on the evidence, are incomplete, ambiguous or otherwise legally

objectionable, the judge need not submit them to the jury.''

After making the foregoing statements, with which this court is in agreement, the Court of Appeals concluded that the ''* * * interrogatories pertaining to its own negligence offered by the appellant were properly denied by the trial court.'' As a reason for so concluding, the Court of Appeals found the proposed interrogatories deficient because they did not incorporate the ''concept of *respondeat superior* which was the basis of appellant's liability * * *.''

An examination of the trial court's instructions to the jury reveals that the jury was instructed that a finding that Trunzo was acting as the agent of appellant would render appellant responsible for the acts of Trunzo and in such case the verdict would be against appellant.

Inasmuch as the trial court instructed the jury on the doctrine of *respondeat superior* as applicable in this cause, it was not necessary to include references to that doctrine in the interrogatories. In other words, the omission of references to *respondeat superior* in the proposed interrogatories would not have prevented the jury from understanding the implications of the question whether ''defendant Vitali & Beltrami, Jr., Inc. was negligent * * *,'' when that question was considered in light of the trial court's instructions.

It is appropriate here to note that Civ. R. 49(B) states: ''The court shall give such explanation or instruction as may be necessary to enable the jury both to make answers to the interrogatories and to render a general verdict * * *.'' As pointed out in the Staff Note to Civ. R. 49, ''* * * The court should be careful to see that the interrogatories, as phrased, are consistent with and responsive to the general instructions to the jury.''

It is the opinion of this court that the reasons given by the trial court for refusing to submit the proposed interrogatories dealing with appellant's negligence, as well as the reasons specified by the Court of Appeals for approving that refusal, are both without merit and that appellant was entitled to have the proposed interrogatories concerning appellant's negligence submitted to the jury.

In regard to the proposed and submitted interrogatories numbered (2), the Court of Appeals concluded: "Appellant's interrogatories requiring narrative answers by requesting the jury to 'state in what respects' the plaintiff or defendant was negligent are improper and should not be used. * * *"

As appellant points out, those interrogatories "followed the form" of the interrogatories in question in *Clevenger* v. *Huling* (1965), 3 Ohio St. 2d 200, 209 N. E. 2d 434. It was there held in paragraph two of the syllabus that:

"Where defendant's answer in such a case [one involving a jury question on the issue of contributory negligence] contains an allegation that 'plaintiff was guilty of negligence which proximately contributed to the injuries of which he complained,' interrogatories in the following form are proper: 'Do you find from the evidence and a preponderance thereof that the plaintiff was negligent?,' 'If the answer * * * is yes, then of what did plaintiff's negligence consist?,' 'Do you find that plaintiff's negligence proximately contributed to his injuries?' "

The Court of Appeals found the *Clevenger* case "* * * inapplicable to this case because it interpreted interrogatories in accordance with former R. C. 2315.16 as being founded 'upon particular material allegations contained in the pleadings controverted by the adverse party.' " The court then concluded that: "Inasmuch as former R. C. 2315.16 was repealed and replaced by Civ. R. 49, that requirement no longer exists."

The question presented then is whether the holding in *Clevenger* that an interrogatory—"of what did plaintiff's negligence consist?"—was proper has been affected by the provisions of Civ. R. 49(B).

In *Clevenger*, the court relied upon paragraph four of the syllabus in *Davison* v. *Flowers* (1930), 123 Ohio St. 89, 174 N. E. 137, which reads:

"Two requests for finding upon particular questions of fact were made by the defendant. (1) Was the defendant negligent?—which the jury answered 'Yes'—and (2) 'If

your answer to defendant's request No. 1 is yes, state of what that negligence consisted.' In view of the fact that more than one specific act of negligence was pleaded and relied on, the court committed error in refusing to submit said second request. Such request and the answer thereto relate to a finding upon a particular question of fact which is of an ultimate and determinative and not of a probative character.''

*Davison* was also followed in *Masters* v. *New York Central Rd. Co.* (1947), 147 Ohio St. 293, 70 N. E. 2d 898, and *Bradley* v. *Mansfield Rapid Transit* (1950), 154 Ohio St. 154, 93 N. E. 2d 672.

Judge Stewart, in *Bradley*, at pages 160 to 163, described Ohio law in respect to interrogatories, at the time of the decision in that case, as follows:

"The established rule in Ohio is that interrogatories, to be proper, must call for special findings on *particular questions of fact* of an ultimate and determinative nature—findings of such a character as will test the correctness of the general verdict returned and enable the court to determine as a matter of law whether such verdict shall stand. *Schweinfurth, Admr.,* v. *C., C., C. & St. L. Ry. Co.,* 60 Ohio St. 215, 232, 54 N. E., 89, 94; *Cleveland & Elyria Electric Rd. Co.* v. *Hawkins,* 64 Ohio St., 391, 397, 60 N. E., 558, 559; and 39 Ohio Jurisprudence, 1147, Section 418.

"Since questions of negligence and proximate cause are usually mixed ones of law and fact (*Pennsylvania Co.* v. *Rathgeb,* 32 Ohio St., 66; 29 Ohio Jurisprudence, 697 and 742, Sections 196 and 207; Clark's Summary of American Law, 54, Section 45), it was held improper to submit to a jury the following interrogatory standing alone:

" 'Was the plaintiff negligent in any degree directly and proximately contributing to his accident and injuries?' See *Brier Hill Steel Co.* v. *Ianakis,* 93 Ohio St., 300, 112 N. E., 1013.

"The answer to a question such as the one posed in the preceding paragraph would constitute merely a conclusion involving both law and fact. An interrogatory in a negligence action to be appropriate should be such as will

elicit a statement of facts from which a conclusion of negligence or no negligence may be drawn. A clear distinction exists then between an interrogatory the answer to which requires a bare finding of negligence, nonnegligence or proximate cause and an interrogatory which requires a *statement of facts* which the law denotes negligence or nonnegligence. See *Board of Commissioners of Huntington County* v. *Bonebrake*, 146 Ind., 311, 318, 45 N. E., 470, 472, and *Chicago & Northwestern Ry. Co.* v. *Dunleavy, Admx.*, 129 Ill., 132, 146, 22 N. E., 15, 18.

"However, in *Davison* v. *Flowers*, 123 Ohio St., 89, 174 N. E., 137, this court approved, and with justification we believe, the submission of a preliminary interrogatory reading, 'Was the defendant negligent?,' immediately followed by the further inquiry, 'If your answer to * * * [such question] is yes, state of what that negligence consisted.' *Obviously such second interrogatory necessitates the finding of a particular question of fact which is of an ultimate and determinative character and not merely of a probative or evidentiary nature.* [Emphasis added.]

"Since the decision in *Davison* v. *Flowers, supra*, this court has expressly approved the submission of a preliminary interrogatory respecting the negligence of a party when coupled with a further interrogatory calling for an answer stating the particular acts of commission or omission which the jury deems to have been negligence. As has been observed, such latter interrogatory demands an expression from the jury of an ultimate fact or facts which will test the correctness of the general verdict from a legal standpoint. See *Masters* v. *New York Central Rd. Co.*, 147 Ohio St., 293, 70 N. E. (2d), 898, and *Elio* v. *Akron Transportation Co.*, 147 Ohio St., 363, 71 N. E. (2d), 707. See, also, *Klever* v. *Reid Bros. Express, Inc.*, 151 Ohio St., 467, 477, 86 N. E. (2d), 608, 613.

"* * *

"Logic supports the conclusion that it is improper to submit an interrogatory which merely inquires whether a party was negligent, but that such an interrogatory is proper if coupled with one which inquires, if the answer

to the interrogatory as to negligence is in the affirmative, of what the negligence consisted.

"It is almost universal practice for a petition in a negligence case to contain an averment that defendant was negligent. If there were no further averments such petition would not constitute good pleading, but practically always after the averment of negligence are averments stating facts which it is claimed constitute such negligence, and in such case the petition, in that respect, is proper. Upon the same logical basis the coupled interrogatories to which we have referred are proper, and there is an additional reason for their propriety in that it is frequently difficult to combine the two interrogatories into one."*

Thus, the interrogatories in question were proper prior to 1955 at a time when interrogatories, to be proper, were confined to findings on "particular questions of fact." They were also considered proper after 1955, when R. C. 2315.16 was amended to provide for findings "upon particular material allegations contained in the pleadings controverted by an adverse party." *Clevenger* v. *Huling, supra* (3 Ohio St. 2d 200).

The Court of Appeals reasoned that *Clevenger* is no longer applicable inasmuch as former R. C. 2315.16 was replaced by Civ. R. 49, and the requirement of the statute that special findings could be made only "upon particular material allegations contained in the pleadings controverted by the adverse party" no longer exists.

The difficulty with such a conclusion is that it apparently assumes that Civ. R. 49 is more restrictive than the provisions of former R. C. 2315.16, quoted above. Civ. R. 49(B), however, states that "interrogatories may be directed to one or more determinative issues whether issues of fact or mixed issues of fact and law."

---

*Although not pertinent to the inquiry here, it should be noted that "* * * that portion of *Bradley* v. *Mansfield Rapid Transit* (1950), 154 Ohio St. 154, 93 N. E. 2d 672, concerning special charges Nos. 1 and 2 so far as the phrase, 'in the slightest degree,' is used * * *" was overruled in *Bahm* v. *Pittsburgh & Lake Erie Rd. Co.* (1966), 6 Ohio St. 2d 192, 217 N. E. 2d 217.

Civ. R. 49(B) thus does not confine interrogatories to particular material allegations, but permits interrogatories on determinative issues which may be issues of fact or mixed fact and law. As the Staff Note to Civ. R. 49 indicates, the rule broadens the scope of the interrogatory to the jury. The following observation from the Staff Note makes this clear:

"It should be noted under Rule 49(B) that the interrogatories are not tied to findings 'upon particular questions of fact' as was the case under Section 2315.16, R. C. (prior to 1955), and that the interrogatories are not tied to the 'material allegations contained in the pleadings controverted by an adverse party' as was the case under Section 2315.16, R. C. (after 1955). Under the rule the interrogatories should be directed to 'one or more determinative issues whether issues of fact or mixed issues of fact and law.' "

It follows from the foregoing discussion that Civ. R. 49(B) has not abrogated this court's holding in *Clevenger* on the question of the validity of an interrogatory which requires the jury to state of what the negligence of a party consisted, inasmuch as such " \* \* \* interrogatory necessitates the finding of a particular question of fact which is of an ultimate and determinative character and not merely of a probative or evidentiary nature." *Bradley* v. *Mansfield Rapid Transit, supra* (154 Ohio St. 154, 161).

Appellant's second contention is that the trial court erred in refusing to instruct the jury on the "loaned servant" doctrine. Appellant cites paragraph two of the syllabus in *Giovinale* v. *Republic Steel Corp.* (1949), 151 Ohio St. 161, 84 N. E. 2d 904, which reads:

"Where an employer loans his employee to another person to do work for and under the direction of the latter, the employee in the doing of such work is regarded as a servant of the one to whom he is loaned, although he remains in the general employ of the one who loaned him. (Paragraph four of the syllabus in *Halkias* v. *Wilkoff Co.*, 141 Ohio St., 139, approved and followed.)"

In *Halkias* v. *Wilkoff Co.* (1943), 141 Ohio St. 139, 47 N. E. 2d 199, it was said, at page 152, that:

" * * * [I]n determining whether, in respect of a particular act, a servant, in the general employment of one person, who has been loaned for the time being to another is the servant of the original employer or the person to whom he has been loaned, the test is whether in the particular service which he is engaged to perform, the servant continues liable to the direction and control of his general employer or becomes subject to that of the person to whom he is lent,—whether the latter is in control as proprietor so that he can at any time stop or continue the work and determine the way in which it is to be done, with reference not only to the result reached but to the method of reaching it. * * * "

In 1 Restatement of the Law, Agency 2d, 501, Section 227, the following comment is found concerning factors to be considered in determining whether a servant directed by his master to perform services for another becomes the servant of such other in performing the services:

"C. * * * [A] continuation of the general employment is indicated by the fact that the general employer can properly substitute another servant at any time, that the time of the new employment is short, and that the lent servant has the skill of a specialist.

"A continuance of the general employment is also indicated in the operation of a machine where the general employer rents the machine and a servant to operate it, particularly if the instrumentality is of considerable value. Normally, the general employer expects the employee to protect his interests in the use of the instrumentality, and these may be opposed to the interests of the temporary employer. If the servant is expected only to give results called for by the temporary employer and to use the instrumentality as the servant would expect his general employer would desire, the original service continues. Upon this question, the fact that the general employer is in the business of renting machines and men is relevant, since in such

case there is more likely to be an intent to retain control over the instrumentality. * * * "

The record shows that the pumper was a valuable piece of machinery, that only Trunzo was entrusted with its operation by appellant, and that Trunzo did not leave the machinery while it was in operation. There is nothing in the record showing that the lessee, Costa, determined in any way how Trunzo was to operate the pumper. As appellee observes in his brief, Trunzo "never subordinated his position as pump operator to * * * Costa * * *." Thus, on the basis of the record, Trunzo was not a "loaned servant" as a matter of law and appellant was not entitled to the jury instructions requested.

Appellant's third and final proposition of law reads:

"While expert opinion testimony is admissible as to an ultimate fact, without infringing upon the function of the jury, the expert must state that the standard of care exercised by the tortfeasor was not in conformity with the standards of the industry in the specialized area in which the tortfeasor was employed."

Appellant's argument on this issue is directed at the testimony of appellee's witness, Cross, an experienced concrete pumper operator, who testified that when a plug in the lines occurred he put the machine in neutral and then reverse to take the pressure off. Appellant states that "Cross failed to testify that the method employed by * * * Trunzo was *not* in keeping with the standards of the industry or the standards or instructions provided by the operating engineers * * *" and that thus "there was no evidence to support the allegation that Trunzo operated the concrete pumper negligently or improperly."

Under the holding in *McKay Machine Co.* v. *Rodman* (1967), 11 Ohio St. 2d 77, 228 N. E. 2d 304, that in " * * * proceedings involving matters of a scientific, mechanical, professional or other like nature, requiring special study, experience or observation not within the common knowledge of laymen, expert opinion testimony is admissible to aid the court or the jury in arriving at the correct de-

termination of the litigated issue," the testimony of Cross was admissible and thus a proper matter for consideration by the court and jury.

Since this court determined that the trial court erred in refusing to submit to the jury appellant's interrogatories directed to the issue of its negligence, the judgment of the Court of Appeals, affirming that refusal, is reversed, and the cause is remanded to the Court of Common Pleas for further proceedings according to law.

*Judgment accordingly.*

HERBERT, CORRIGAN and STERN, JJ., concur.
CELEBREZZE, W. BROWN and P. BROWN, JJ., dissent.

WILLIAM B. BROWN, J., dissenting. There is no rational basis for requiring a jury to postulate a legalistic response in delivering its verdict. Any narrative statements of law *or* fact should be prepared by lawyers, and if those statements are readily comprehendible by a layman, and the solicited response is an answer of "yes" or "no," then the statements may properly be posed to a jury. Otherwise, the so-called practice of testing the jury's verdict serves only to exploit (1) a layman's failure to properly *articulate* legal doctrine or (2) the jury's failure to agree on a *single* set of words in drafting the narrative.

Civ. R. 49 could just as readily be interpreted to require only "yes" or "no" answers to "issues of fact," meaning, *e. g.*, "Did defendant run the red light?", or "mixed issues of fact and law," meaning, *e. g.*, "Was defendant negligent?" To hold otherwise is to return to the morass depicted in the staff notes to Civ. R. 49 (Page's Ohio Revised Code, Civil Rules, pp. 202-205).

The most compelling reason for affirming the judgment of the Court of Appeals is contained in the following portion of that court's opinion:

"Appellant's interrogatories requiring narrative answers by requesting the jury to 'state in what respects'

the plaintiff or defendant was negligent are improper and should not be used. This type of interrogatory, in effect, requires a special verdict which has been expressly abolished by Civ. R. 49(C). Such questions require jurors to set forth in writing facts and conclusions which attorneys and judges themselves often have difficulty in properly phrasing. Cf. McBride, Trial Practice Under the New Ohio Rules of Civil Procedure, 39 Cin. L. Rev. 512, 516. Permitting the use of this type of question would rekindle the confusion, error, appeal and new trials inherent in the prior controlling statutes and completely contravenes the intent and purpose of Civ. R. 49.''

P. BROWN, J., concurs in the foregoing dissenting opinion.