YORK et al., Appellees,

v.

MAYFIELD NEUROLOGICAL INSTITUTE, INC. et al., Appellants.

[Cite as *York v. Mayfield Neurological Inst., Inc.* (1999), 133 Ohio App.3d 777.]

Court of Appeals of Ohio,
Twelfth District, Butler County.

Nos. CA96–08–164 and CA97–03–057.

Decided March 29, 1999.

778

Gardner, Ewing & Souza and Gary L. Gardner; Bressler, Shanks & Gedling Co. and Michael D. Shanks, for appellees.

Rendigs, Fry, Kiely & Dennis, L.L.P., and David W. Peck; Taft, Stettinius & Hollister and James M. Hall, Jr., for appellants.

---

POWELL, Presiding Judge.

Defendants-appellants, John M. Tew, M.D. and Mayfield Neurological Institute, Inc., appeal the finding that, prior to surgery, Tew failed to obtain informed consent from plaintiff-appellee, Harold Perry York.[1] We reverse in part the decision of the trial court and remand for a new trial on the informed consent and derivative consortium claims.

In 1985, York was diagnosed by Tew with a "pea sized tumor" located behind his right eye. At that point, Tew advised that surgery was not necessary. In 1992, York was observed again by Tew. At that point, Tew advised York that the tumor had grown in size and could double "very quickly." According to York, as well as Mary Evelyn, in a meeting of February 24, 1992, Tew advised York that the tumor was not "life threatening," but that it was in York's best interest to undergo the surgery immediately.

According to York and Mary Evelyn, Tew also discussed the risks of surgery with them. York and Mary Evelyn testified that Tew never mentioned the risk of stroke to them at any time before surgery. York testified that the only risks Tew advised him of was death, as a general risk of any major surgery, and loss of vision in his right eye. According to Tew, the risk of stroke, as well as other material risks specific to this operation, was explained to York by Tew and Dr. Art Arand, the chief resident, the day before surgery, March 8, 1992. Tew stated that he characterized the risk of stroke as approximately two percent. Tew testified that he did not specifically recall the March 8, 1992 conversation at the time of his deposition, but did recall the conversation at the time of trial. York testified at trial that he would have preferred death to the risk of stroke and would not have undergone surgery if aware of the risk of stroke.

On March 9, 1992, Tew performed the surgery to remove the tumor from behind York's right eye. Mary Evelyn testified that, after surgery, she was told by Tew that the "carotid artery had been nicked." Harold York, York's son, testified that Tew told him that the carotid artery had to be clamped. The clamping apparently limited blood flow to York's brain. After surgery, Mary

---

1. Based on a derivative consortium claim, Mary Evelyn York ("Mary Evelyn") is also an appellee.

Evelyn noticed a left side weakness in York and believed that he had a stroke. According to Tew, York suffered a condition during surgery variously referred to in the testimony as a "TI" or "transient ischemic" or "transient stroke," which Tew characterized as largely reversible. However, Mary Evelyn testified that Arand informed her two or three days after the operation that York had in fact suffered a stroke.

Appellees filed a complaint against appellants alleging that Tew negligently performed the surgery and failed to obtain informed consent from York. After a trial that began on June 10, 1996, the jury found Tew was not negligent in performing the surgery. However, the jury concluded that Tew failed to obtain informed consent from York. Accordingly, the jury awarded damages of $1,200,-000 as well as $320,000 for the consortium claim of Mary Evelyn. Appellants moved for judgment notwithstanding the verdict pursuant to Civ.R. 50(B) or, alternatively, a new trial pursuant to Civ.R. 59. These motions were overruled by the trial court. From these decisions, appellants filed a timely notice of appeal and present three assignments of error for our review:

"Assignment of Error No. 1:

"The trial court erred in failing to grant judgment notwithstanding the verdict or new trial on the lack of informed consent claim.

"A. As a matter of law, appellees were not entitled to recover on a claim for lack of informed consent since the risk of injury to appellee by failing to have the surgery was equal to or greater than the allegedly undisclosed risk of surgery.

"B. The jury's verdict was not properly tested by means of interrogatories requested by appellants, and accordingly cannot be permitted to stand.

"Assignment of Error No. 2:

"The trial court erred as a matter of law in precluding appellants from calling Arthur Arand, M.D. as a fact witness in this case; such error requires reversal of the jury's verdict and remand for a new trial.

"Assignment of Error No. 3:

"The trial court committed prejudicial error in its refusal to permit appellants to read the deposition of appellees' psychologist expert when appellants, during trial, announced for the first time an intention not to call that psychologist as a witness."

In *Nickell v. Gonzalez* (1985), 17 Ohio St.3d 136, 17 OBR 281, 477 N.E.2d 1145, syllabus, the Supreme Court of Ohio established a tripartite test for a lack of informed consent claim:

"(a) The physician fails to disclose to the patient and discuss the material risks and dangers inherently and potentially involved with respect to the proposed

therapy, if any; (b) the unrevealed risks and dangers which should have been disclosed by the physician actually materialize and are the proximate cause of the injury to the patient; and (c) a reasonable person in the position of the patient would have decided against the therapy had the material risks and dangers inherent and incidental to treatment been disclosed to him or her prior to the therapy."

The court noted:

"One of the great dilemmas in applying this test is the question of how far a doctor must go in establishing whether a potential danger, albeit improbably remote, is sufficiently material to require disclosure. To this end the reasonable patient standard is utilized. * * * *In the instant case the jury was properly instructed that ' * * * a risk is material when a reasonable person, in what the physician knows or should know to be the patient's condition, would be likely to attach significance to the risk or cluster of risks in deciding whether or not to forego the proposed treatment.'"* (Emphasis added.) *Id.* at 139, 17 OBR at 283, 477 N.E.2d at 1148–1149.

■ In the first assignment of error, appellants argue that, as a matter of law, the informed consent claim must fail since the risk of not having the surgery was equal or greater than the undisclosed risk of surgery, including stroke. Appellees claim that this argument is inapplicable because Tew failed to disclose to York the material risks of *not* having the surgery and therefore York could not have judged the risks of not having the surgery. In our view, appellants' argument does legally apply to this case. However, after reviewing the record, we find the question of whether York, if fully informed of the material risks of the surgery, would have had the surgery anyway to be a question of fact.

■ We find no support in the case law suggesting that the "reasonable person in the patient's circumstances" element of *Nickell* does not apply if the patient is not informed of the risks of not undergoing the surgery. This exception was never enunciated in *Nickell* or its progeny. The relevant question is whether a reasonable patient under York's circumstances, fully aware of the material risks of having surgery or not having surgery, would have decided against the surgery. The third element of informed consent addresses the causal connection of whether the failure to inform a patient of the material risks of surgery would have affected a reasonable patient's decision in York's circumstances. This causal connection is mandatory in order to establish a prima facie case of lack of informed consent.

Having concluded that the argument has legal merit, we consider whether the facts of the case *sub judice* justify entering judgment for appellants as a matter of law. Appellants claim that without surgery York would have gone blind in one

and possibly both eyes, been paralyzed on his left side, experienced dementia and eventually death. However, Tew's deposition testimony was that York's condition was not immediately life-threatening, and that continued observation was a viable option for York. In addition, the recollections of York and his family as to Tew's statements about the material risks, as explained before surgery, directly contradict Tew's testimony. Although witnesses from York's family are not qualified medical experts, their testimony raises obvious issues of credibility appropriate for a trier of fact to resolve. York is also entitled to address potential discrepancies between Tew's deposition and trial testimony. We can enter judgment in favor of appellants if the *only* decision a reasonable trier of fact could reach is that a reasonable patient under York's circumstances, fully informed of the material risks, would have had the surgery. *White Motor Corp. v. Moore* (1976), 48 Ohio St.2d 156, 160, 2 O.O.3d 338, 340–341, 357 N.E.2d 1069, 1071–1072. This record cannot support such a finding.

Appellants next argue that the trial court failed to submit a properly proposed interrogatory to the jury. We agree.

Civ.R. 49(B) states:

"The court shall submit written interrogatories to the jury, together with appropriate forms for a general verdict, upon request of any party prior to the commencement of argument. Counsel shall submit the proposed interrogatories to the court and to opposing counsel at such time. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the interrogatories shall be submitted to the jury in the form that the court approves. The interrogatories may be directed to one or more determinative issues whether issues of fact or mixed issues of fact and law."

The Supreme Court of Ohio, in interpreting Civ.R. 49(B), has stated that it is mandatory that a trial court submit to the jury properly drafted interrogatories. *Ragone v. Vitali & Beltrami, Jr., Inc.* (1975), 42 Ohio St.2d 161, 71 O.O.2d 164, 327 N.E.2d 645. See, also, *Karimkhani v. Fiddler* (July 20, 1983), Clermont App. No. 1160, unreported, at 13, 1983 WL 4428. However, a court can reject an interrogatory "inappropriate in form and content." *Freeman v. Norfolk & Western Ry.* (1994), 69 Ohio St.3d 611, 613, 635 N.E.2d 310, 313, citing *Ragone* at paragraph one of the syllabus. A court also can refuse to submit an interrogatory that is "ambiguous, confusing, redundant, or otherwise legally objectionable." *Id.* Finally, if an interrogatory is "merely probative or evidentiary in nature and does not touch on an ultimate issue, [it] is improper." *Id.* at 614, 635 N.E.2d at 313.

The trial court submitted seven interrogatories to the jury, two of which are relevant to the elements of an informed consent claim. Those interrogatories and the responses of the jury are as follows:

"*Interrogatory 3:*

"Do you find by a greater weight of the evidence that defendant John Tew, M.D. failed to obtain adequate informed consent from plaintiff Harold Perry York in that he failed to disclose the known and material risk of stroke? Answer— YES

"*Interrogatory 4:*

"Do you find by a greater weight of the evidence that the failure by defendant John Tew, M.D. to obtain informed consent from plaintiff Harold Perry York was a proximate cause of injury to Harold Perry York? Answer—YES"

A comparison of interrogatories three and four with the elements of informed consent, as given in *Nickell*, reveals that these two interrogatories parallel the first two elements of an informed consent claim. The proposed—and ultimately rejected—interrogatory attempted to address the third and final element of the *Nickell* test. The proposed interrogatory read as follows:

"Do you find that a reasonable person in the position of the Plaintiff Harold Perry York would have decided against the surgery if the material risk and danger of stroke inherent and incident to that surgery had been disclosed to that reasonable person prior to surgery?"

When appellants proposed this interrogatory to the trial court the following colloquy occurred:

"*MR. TRIONA:* Yes, sir. I would like you to have an interrogatory that reads, 'Do you find that a reasonable person in the position of Plaintiff Harold Perry York would have decided against the surgery if the material risk and danger of stroke inherent and incident to that surgery had been disclosed to that reasonable person prior to surgery?'

"*MR. GARDNER:* Let me see that one. [Reading Mr. Triona's interrogatory] You've already put that in there, Judge, that's a duplication. I object to its being emphasized by putting it on there twice.

"*MR. TRIONA:* Well, it's not a separate interrogatory * * *.

"*MR. GARDNER:* That's part of the proximate cause.

"*BY THE COURT:* Well, it's in the Jury Charge and it explains reasonable person and the way this Jury Interrogatory Number 3 reads, in light of the other interrogatories that the Court has proposed, this one, *I think, is misleading because—because it talks about to that reasonable person—it talks about a*

*reasonable person. The abstract*—and I think the Jury Charge makes it clear. This is kind of confusing because it makes me think that the jury could say, 'Well, any reasonable person * * *' and that's not really the test. *The test is a reasonable person in the position of the * * *.*

"*MR. TRIONA:* Well, that's what the interrogatory says.

"*BY THE COURT:* * * * *defendant.*[2] So, the Court doesn't read it that way. I think it's confusing. Overruled." (Emphasis and footnote added.)

■ Appellants argue that the trial court erred by refusing to submit this interrogatory to the jury. The trial court concluded that the interrogatory referred to a reasonable person in the abstract instead of reasonable person in the position of the patient, Harold Perry York. However, a plain reading of the interrogatory shows that it clearly does state "a reasonable person in the position of Plaintiff Harold Perry York," and not a reasonable person in the abstract.[3]

■ The proposed interrogatory is not redundant to interrogatory four, the "proximate cause" instruction. Interrogatory four addressed the second element of the *Nickell* test. The second element asks the trier of fact to conclude whether the material risk or risks a physician failed to disclose was the proximate cause of a patient's injury. For example, if a physician failed to disclose a particular material risk and the patient was injured by a different material risk, which the physician did disclose, the second element would not have been met. In this case, the material risk was a stroke. The trier of fact found that Tew failed to disclose this material risk and that a stroke was a proximate cause of York's postoperative injuries.

Although both the second and third elements of *Nickell* are related to causality, the third element of informed consent addresses a completely different question. In the context of this case, the third element addresses whether a reasonable person in York's circumstances would have consented to the surgery to remove the tumor despite the material risk of a stroke. An application of this element to the case *sub judice* reveals the critical importance of this element. The jury found that Tew failed to disclose the material risk of a stroke and that a stroke did materialize during surgery, causing injury to York. Under those circumstances, the jury could still conclude that, if a reasonable person in York's

---

**2.** The test is a reasonable person in the position of the plaintiff-patient.

**3.** The proposed interrogatory almost parallels both the standard Ohio Jury Instruction and the *Nickell* language for the third and final element of an informed consent claim. The only difference is the interrogatory later refers to "that reasonable person" instead of the pronoun "him." This is a distinction without a difference. The phrase "*that* reasonable person" can refer only to the aforementioned "reasonable person in the position of Plaintiff." Any other reading of the proposed interrogatory is illogical.

circumstances had been aware of the material risk of stroke, he would have undergone the surgery anyway.[4] By allowing interrogatory three and four, and not the proposed interrogatory, the jury's logical conclusion would have been that by answering "YES" to interrogatories three and four, the liability of the informed consent claim was settled.[5]

 We recognize that the jury instructions addressed all the elements of a *Nickell* informed consent claim. Nevertheless, a properly proposed interrogatory cannot be rejected because it is redundant to a jury instruction. The Supreme Court of Ohio has never created this exception and we decline to do so today. Indeed, a validly proposed interrogatory, consistent with a jury instruction, must be given to the jury. Simply, jury instructions are not a substitute for a validly proposed interrogatory. The trial court always provides jury instructions on how to apply the law to the facts of the case. The point of Civ.R. 49(B) is to allow a general verdict to be tested beyond a bare ruling for the defendant or plaintiff with responses to determinative legal issues. Based on the previous discussion, the proposed interrogatory addressed a determinative legal issue: whether the third element of the *Nickell* informed consent test had been satisfied. See *Freeman*, 69 Ohio St.3d at 614, 635 N.E.2d at 313–314.

The import of interrogatories is to test a general verdict. The trial court's refusal to admit the proposed interrogatory ensured that the third element of the *Nickell* test could not be specifically answered by the jury. As noted, the evidence does not clearly establish how a reasonable trier of fact would answer the proposed interrogatory. Therefore, the verdict of the jury concerning the lack of informed consent in this case is fatally flawed. Thus, as to the argument concerning the failure of the trial court to submit appellants' proposed interrogatory, the first assignment of error is well taken. However, as discussed in the initial argument of the first assignment of error, we do not find, as a matter of law, that a reasonable trier of fact would necessarily conclude that York would have undergone the surgery. That issue is a question of fact that requires weighing of the evidence. Accordingly, the judgment of the trial court is vacated in part. Particularly, we vacate the finding of lack of informed consent and

---

4. The fact that York testified that he would not have undergone the surgery is not dispositive.

5. Interrogatory five instructs the jury to award appropriate damages if the answers to interrogatories three and four are "YES." By addressing only two of the *Nickell* elements, the interrogatories fail to complement the jury instructions. In *Ragone*, 42 Ohio St.2d at 166, 71 O.O.2d at 166–167, 327 N.E.2d at 649, the Supreme Court of Ohio admonished trial courts to ensure, quoting the Staff Note to Civ.R. 49, that " 'the interrogatories, as phrased, are consistent with and responsive to the general instructions to the jury.' " By only including the two interrogatories, the importance of the third element of the *Nickell* test could have been lost on the jury, despite the jury instructions.

corresponding damages award, as well as the derivative consortium claim and corresponding damages award. We remand this case for a new trial on the issue of informed consent, as well as the derivative consortium claim.

Based on the disposition of the first assignment of error, the second and third assignments of error are overruled as moot. In addition, since we are vacating the portion of the trial court's judgment rendered in appellees' favor, all the assignments of error raised in the procedurally consolidated appeal concerning the award of prejudgment interest to appellees are overruled as moot.

The judgment of the trial court is reversed in part and the cause is remanded for a new trial.

*Judgment accordingly.*

KOEHLER, J., concurs.

KERNS, J., dissents.

JOSEPH D. KERNS, J., retired, of the Second Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 6(C), Article IV of the Ohio Constitution.

KERNS, Judge, dissenting.

With a view to evidence that the plaintiff would not have consented to the surgery in the face of a real possibility of a stroke, the rejected interrogatory proposed by the defense does bear considerable ambiguity, and the trial court was not under a duty to edit or rewrite the submitted interrogatory. Furthermore, the correct instructions of the trial court upon the same subject matter substantially diluted the possibility of any prejudice from the alleged error. In my opinion, therefore, the reversal of the verdict upon the ground stated reflects an unwarranted invasion upon the province of the jury in this case.

With particular reference to the question of prejudgment interest, the record discloses that the common pleas court acted with a conscious regard for the provisions of R.C. 1343.03(C), and that its judgment allowing such interest is supported by competent and credible evidence. Hence, this court may not interfere.

Accordingly, I respectfully dissent from the opinion of my colleagues. I would affirm the judgment denying the motion for judgment notwithstanding the verdict, or in the alternative, for a new trial, and also affirm the order allowing prejudgment interest.