OPINION
This case is before us on the appeal of Juan Victor Lopez, following his conviction on charges of rape and child endangering. At the time of the offenses, Lopez was a 21 year old man with no prior criminal history. The charges resulted from the events of July 2, 2000, when a one-year old female child sustained serious injuries while in Lopez's care. On the day of the injury, the child's mother, Tami went to work, leaving the child with Lopez. At the time, Tami and Lopez were living together.
Some evidence in the record indicates that Lopez and Tami had a boyfriend/girlfriend relationship. However, other evidence indicates that Lopez and Tami had recently been married, against Lopez's wishes. Apparently, Lopez did not love Tami, but married her at the urging of the pastor of the "Christian Overcomers Church." This pastor apparently exercised a great deal of influence over Lopez. Tami was seven months pregnant, but the record is again not clear concerning whether Lopez was the father of that child. Lopez admittedly was not the natural father of the child who was injured.
According to Lopez, the child slipped out of his hands and fell when he tried to take her out of her playpen. She hit her head first on a toy and then on the floor. Lopez explained the injury to the child's vagina by stating that he may have gotten a little rough with her when he changed her diaper. The medical reports indicate that Lopez's account is completely inconsistent with the physical findings. Instead, the treating physician concluded that the child had been physically and sexually abused. The medical reports also indicate that the child had strangulation marks on the left side of her neck, a ruptured left ear drum, bruising under both eyes, redness, swelling, and heavy bruising of the left ear, vaginal penetration, and a transected (torn-apart) hymen. The treating physician indicated that the genital examination was consistent with forcible vaginal penetration, with some unknown object. The physician also said the injuries were significant and potentially life-threatening.
After the child was injured, Lopez called Tami at work to tell her what had happened. Tami then came home, and they took the child to the hospital, after first stopping at their pastor's house. Following a police investigation, Lopez was indicted for rape of a person under 13 and for child endangerment. The term "force" was later added to the rape indictment, making the possible sentence life in prison. Because of this risk, Lopez entered an Alford plea to the rape charge. See North Carolinav. Alford (1970), 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162. Lopez also pled guilty to child endangerment. In exchange, the State dropped the "force" element from the indictment. After the trial court found Lopez guilty, the case was scheduled for a sex offender and sentencing hearing.
At the hearing, the State presented evidence from a psychologist, and the defense put on evidence from Lopez's step-father, who had raised Lopez from infancy. The court also had before it the pre-sentence investigation and a written report from the psychologist who testified at the hearing. After hearing the evidence, the court decided that Lopez was a sexual predator. In addition, the court sentenced Lopez to 9 years imprisonment for the rape charge and seven years for child endangerment, with the terms to be served concurrently.
Lopez now appeals, raising the following assignments of error:
 I. The Trial Court Erred in Declaring Defendant-Appellant a Sexual Predator.
 II. The Prosecutor's Sole Witness Established by Clear and Convincing Evidence that Defendant-Appellant Was Not a Sexual Predator Based on That Witness's Expert Testimony.
 I
Although two separate assignments of error have been included, both (at least in our view) make the same challenge, i.e., both assignments of error focus on the testimony of the State's expert witness. In the first assignment of error, Lopez claims that the expert testimony failed to establish likelihood of recidivism under the ten statutory factors contained in R.C. 2950.09(B)(2). The basis for this argument is the psychologist's (Dr. Stookey's) admission that psychologists have no current ability to review the ten statutory factors and assign weights and measures to the probability of recidivism. Dr. Stookey also said there is presently no way to scientifically determine whether the absence of certain factors outweighs the presence of other factors.
The significance of these points to the present case is that only seven of ten factors indicated that Lopez was likely to be a repeat offender. Other factors either weighed against recidivism or were not relevant. Due to the lack of scientific knowledge about how each factor interacts with or compares to the others, Lopez contends that R.C. 2950.09(B)(2) actually gives courts no guidance. Lopez argues that the problem is compounded by State v. Cook (1998), 83 Ohio St.3d 404, which allows trial courts to ignore one or all of the factors. This particular assertion is based on the comment in Cook that trial courts do not have to "list" the statutory criteria in deciding whether an individual is a sexual predator. Id. at 426.
Finally, Lopez claims that appellate rights are affected because defendants cannot know which factors have weight, and whether the weight the trial court gives a specific factor is of clinical significance. In much the same vein, Lopez contends in the second assignment of error that Dr. Stookey's testimony was insufficient to support a sexual predator finding because it gave the court no guidance. Since these arguments are intertwined, we will consider both assignments of error together.
In deciding if offenders are sexual predators, trial judges must consider all relevant factors, including but not limited to, all the following:
(a) The offender's age;
 (b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;
 (c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;
 (d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;
 (e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 (f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;
(g) Any mental illness or mental disability of the offender;
 (h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 (i) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;
 (j) Any additional behavioral characteristics that contribute to the offender's conduct.
R.C. 2950.09(B)(2). Under the statute, the sexual predator determination is based on "clear and convincing evidence." R.C. 2950.09(B(3). For many years, this term has been defined as:
 that measure or degree of proof which is more than a mere `preponderance of the evidence,' but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.
Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
In State v. Williams (2000), 88 Ohio St.3d 513, the Ohio Supreme Court rejected a challenge to R.C. 2950.09 on the ground that the statute was unconstitutionally vague. Id. at 533-34. Although the court admitted that the statute was broadly written, it also stressed that:
 a certain level of broadness in the language of R.C. Chapter 2950 allows for individualized assessment rather than an across-the-board rule. "Because each sexual-predator determination is fact-specific, the framework provided to the courts in the statute must be broadly worded to accommodate both the most common and most exceptional cases." * * * By writing the statutory language to accommodate for individualized assessments, the General Assembly has not rendered R.C. Chapter 2950 unconstitutionally vague. Any abuses in the sex offender classification hearing or any misapplication of the factors in R.C. 2950.09(B)(2) to a particular individual can be cured through the appellate process. * * * We will not rule out the possibility that R.C. Chapter 2950 may be misapplied on an individual basis, but the statute is facially constitutional.
Id. at 534 (citation omitted). Thus, the court upheld the constitutionality of the statute as written, but recognized that "as applied" challenges might be upheld. The present case involves such a challenge. However, Lopez also clearly implies that the statute is defective as written, based on the lack of actual content or meaning that can be ascribed to the statutory factors.
We do not think the Ohio Supreme Court would agree with this implication. As we said, the court has already found that the factors are not unconstitutionally vague. Additionally, the court recently said inState v. Thompson (2001), 92 Ohio St.3d 584, that the factors are guidelines that "serve an important function by providing a framework to assist judges." Id. at 587. The court also said the guidelines "provide consistency in the reasoning process." Id. In this regard, the court emphasized that while trial judges must "consider" each factor, the statute does not tell courts what weight, if any, they must assign to each factor. Id. at 587-88. In particular, the court commented that "determining recidivism is at best an imperfect science and while the guidelines set forth potentially relevant factors, some may not be applicable in every case." Id. at 588.
From these comments, we conclude that the Ohio Supreme Court would not be troubled by the alleged lack of content in R.C. 2950.09(B)(2). As the court said, psychology is not a precise science. In fact, the relative relationship of the recidivism factors may not ever be capable of statistical analysis. Nonetheless, that does not mean that psychological testimony has no value, nor does it mean that the factors are meaningless. Generally, expert testimony on scientific or technical matters is admitted to aid courts or juries in arriving at correct decisions. See, e.g., Ragone v. Vitali Beltrami, Jr., Inc. (1975),42 Ohio St.2d 161, 174. However, a particular fact-finder will decide the appropriate weight, if any, to give the testimony. As the trial court noted in the present case, expert testimony on each statutory factor is not required.
Furthermore, while Cook did say that courts do not need to "list" all statutory criteria, this is not the end of the story. In State v.Eppinger (2001), 91 Ohio St.3d 158, the Ohio Supreme Court made the following observation:
 [w]e are cognizant of our statement in State v. Cook, supra, that R.C. 2950.09 does not require the court to list all criteria, but only to consider all relevant factors in making its findings. * * * However, we also noted in Cook that the sexual offender classification hearing in that case was not a model hearing.
Id. at 166-67. Just before making this observation, the court had outlined objectives and procedures for model sexual offender classification hearings. Id. at 166. We recently held that these model procedures are mandatory. State v. Marshall (Nov. 16, 2001), Montgomery App. No. 18587, unreported, 2001 WL 1468893 (interpreting Eppinger).
One part of the model procedure is the trial court's consideration of statutory factors. Equally important, the court must discuss the evidence and factors it has relied on to decide if recidivism is likely.91 Ohio St.3d at 166. Accord, Thompson, 92 Ohio St.3d at 588. And finally, the court's discussion must be on the record. Id. Although courts must consider the statutory factors, they do not have to discuss each factor. In this regard, Lopez's objection might still stand, even afterEppinger. However, we do not view this as a problem. Eppinger indicates that the pertinent factors and evidence should be discussed. This approach is logical, because all factors may not apply to every case. For example, the present case did not involve the use of alcohol or drugs to impair the victim. R.C. 2950.09(B)(2)(e). Consequently, focusing on this factor would be a waste of time. If trial courts discuss the relevant factors on the record, defendants will know the basis for decisions and appellate courts will also have an adequate record to review. Moreover, even if the precise statistical weight of a factor may not be known — or, indeed, may never be known — that is not a fundamental defect in either the proceedings or the statute. Instead, it is the result of an often inexact science.
Turning to the record in the present case, we note that the trial court did discuss its findings on the record at the conclusion of the sexual predator classification hearing. First, the court remarked on the fact that expert opinion was not required for each factor. The court also noted that it could find a person to be a sexual predator without the benefit of expert opinion. The court then outlined the factors it found important: Lopez's young age; his instability in personal relationships; and the severe nature and extent of the injuries to the young child. Based on these circumstances, the court found clear and convincing evidence that Lopez was a sexual predator.
Because the court discussed the evidence and factors upon which it relied, the procedure in this case was consistent with Eppinger. Further, the evidence in the record supports the court's decision. Specifically, Dr. Stookey testified that she would classify Lopez as a rapist, given the nature of the crime. She also testified at some length about R.C. 2950.09(B)(2)(i), which is the factor relating to the display of cruelty. Dr. Stookey testified that a relevant consideration for this factor is any sadistic type of sexual interest. In this regard, Dr. Stookey found a strong indicator of recidivism present, due to the level of violence and the fact that the violence was against a child, which is rare. This was also the primary factor relied on by the trial court.
In considering this issue, we have reviewed the transcript and all other materials in the file, including the pre-sentence investigation report, medical and police reports, and photos of the child. Based on our review, we find competent, credible evidence to support the decision that Lopez is a sexual predator. See, e.g., State v. Hardie (2001),141 Ohio App.3d 1, 4; State v. Bolin (June 15, 2001), Montgomery App. No. 18605, 2001 WL 669825, p. 4; and State v. Parsons (Aug. 17, 2001), Huron App. No. H-00-042, unreported, 2001 WL 950043, p. 4 (outlining relevant standard of review).
Lopez contends that the evidence indicates, at most, that he can be categorized as a violent person who hurt a child. We might agree with this statement if the child's physical injuries did not involve the genital area. However, that is not the case. In addition to injuries such as strangle marks on the child's neck, the medical records indicate that the child's vagina was forcibly penetrated one inch with some type of object. As we mentioned earlier, the examining doctor said Lopez's account was completely inconsistent with the physical findings.
Admittedly, "simply committing a single sexually oriented offense is not proof, without further evidence or other compelling facts, that the offender is `likely to engage in the future in one or more sexually oriented offenses.'" State v. Ward (1999), 130 Ohio App.3d 551, 561. However, this is not simply a case of a single sexually oriented offense. Instead, the nature of the injuries inflicted indicates a strong likelihood of recidivism. We have previously noted that aggression and sadism are indicative of a high risk to re-offend. State v. Back (July 27, 2001), Montgomery App. No. 18485, unreported, 2001 WL 849035, p. 3.
Based on the preceding discussion, the first and second assignments of error are overruled, and the judgment of the trial court is affirmed.
WOLFF, P.J., and FAIN, J., concur.