This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Evelyn Shepherd, appeals the decision of the Summit County Court of Common Pleas. We affirm.
On December 14, 1998, Ms. Shepherd was operating a vehicle in Summit County, Ohio when she was involved in an automobile accident with Michael Freeze, who was also operating a vehicle. On December 12, 2000, Ms. Shepherd filed a complaint for damages against Mr. Freeze. Mr. Freeze's negligence was not an issue at trial. The case was tried before a jury and the jury returned a general verdict for Ms. Shepherd in the amount of $14,000. This appeal followed.
Appellant asserts two assignments of error. We will address each in turn.
 First Assignment of Error "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFF-APPELLANT BY ENTERING JUDGMENT ON THE JURY'S VERDICT AWARDING LESS THAN THE PLAINTIFF-APPELLANT'S MEDICAL EXPENSES WHERE THE EVIDENCE ESTABLISHED THAT THE PLAINTIFF-APPELLANT SUFFERED PAIN AND LOST WAGES AS A DIRECT AND PROXIMATE RESULT OF THE AUTOMOBILE COLLISION THAT IS THE SUBJECT OF THE CASE AND WHERE THERE WAS NO EVIDENCE THAT THE PLAINTIFF-APPELLANT'S MEDICAL EXPENSES WERE NOT NECESSARY, REASONABLE, AND DIRECTLY RELATED TO THE AUTOMOBILE COLLISION."
In her first assignment of error, Ms. Shepherd asserts that the evidence at trial supported an award for all of her medical expenses, which totaled over $17,000, as well as an award for pain and lost wages and that, consequently, the amount of the trial court's damage award, a general verdict of $14,000, was against the manifest weight of the evidence. We disagree.
When the manifest weight of the evidence is challenged, "[a]n appellate court conducts the same manifest weight analysis in both criminal and civil cases." Ray v. Vansickle (Oct. 14, 1998), 9th Dist. Nos. 97CA006897/97CA006907.
 "The [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." State v. Thompkins
(1997), 78 Ohio St.3d 380, 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
Moreover, "[e]very reasonable presumption must be made in favor of the judgment and the findings of facts [of the trial court]." Karches v.Cincinnati (1988), 38 Ohio St.3d 12, 19. Furthermore, "if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the trial court's verdict and judgment." Id. "`[A] reviewing court can reverse a judgment upon an assignment of error involving the weight of the evidence only when the verdict is so manifestly contrary to the natural and reasonable inferences to be drawn from the evidence as to produce a result in complete violation of substantial justice[.]'" Royer v. Bd. of Education (1977),51 Ohio App.2d 17, 20, quoting Jacobs v. Benedict (1973),39 Ohio App.2d 141, 144; see, also, Farkas v. Detar (1998),126 Ohio App.3d 795, 807.
In the present case, contradictory evidence was presented through several witnesses with regard to Ms. Shepherd's back, knee, and thumb ailments. Dr. Harvey Friedman, a neurologist, testified that he reviewed Ms. Shepherd's medical records as far back as 1995 and that such records documented a history of complaints of low back pain prior to her accident which occurred on December 14, 1998. He stated that he also reviewed her MRI report which indicated a lot of degeneration in her back and, further, that degeneration can be caused by everyday wear and tear. Dr. Friedman testified that Ms. Shepherd had incurred soft tissue injury in the accident with regard to her back but that he also believed that the soft tissue injury had cleared up to the point that it should no longer cause her any problems. He further stated that his examination indicated that Ms. Shepherd had no neurological injuries that related to the automobile accident.
Dr. Timothy Meyer, an orthopedic surgeon, testified that he reviewed Ms. Shepherd's medical bills and felt that they were both reasonable and necessary in relation to the automobile accident. Dr. Meyer testified that he saw Ms. Shepherd in regard to her complaint of knee joint pain. He stated that Ms. Shepherd had incurred a soft tissue injury to her knee and cosmetic dimpling of the skin in that area and that such injury was caused by a direct blow to the knee. He stated that he advised Ms. Shepherd that she may have a permanent discomfort as a result of the direct blow to her knee. Dr. Meyer testified that, following an examination and an arthroscopy procedure, he could not determine a cause for the knee joint problem of which she complained. He testified that the arthroscopy did not indicate that Ms. Shepard required any surgical intervention and that there was not any evidence of any trauma caused by the direct blow to the knee; rather, all he found was early signs of wear and tear arthritis.
Dr. Meyer testified that Ms. Shepherd had also seen him in regard to a problem with her thumb and that he had determined that she showed signs of a condition known as trigger thumb. Dr. Meyer also testified that he believed that the thumb condition was related to the accident but explained that the most common cause of the condition was repetitive use of the thumb. To explain what he meant by repetitive use, Dr. Meyer gave an example of a hairdresser who would use his or her thumb repeatedly in his or her daily work. On cross-examination, Dr. Meyer admitted that he was not aware of the fact that Ms. Shepherd had been a hairdresser for numerous years prior to the accident. He also conceded that his medical notes indicated that Ms. Shepherd had told him that her thumb began to cause her extensive problems once she returned to her current job as an administrative assistant and had to do "a lot of writing[.]"
Dr. J. Patrick Flanagan, an orthopedic surgeon, testified that Ms. Shepherd indicated to him that she had experienced low back pain for several years prior to the accident but that the accident aggravated the problem. Further, upon reviewing her x-ray examination, he had noted that she had a degenerative joint disease. Dr. Flanagan stated that he was aware of the fact that Ms. Shepherd had seen a chiropractor and a neurosurgeon with regard to back pain prior to visiting his office and that the neurosurgeon had ordered an MRI for Ms. Shepard in 1997. The MRI had revealed that Ms. Shepherd had a degenerative back condition prior to the accident in December of 1998. Dr. Flanagan stated that, in his opinion, the automobile accident had aggravated a preexisting low back pain. On cross-examination, Dr. Flanagan testified that he had given Ms. Shepherd an anti-inflammatory medication following the accident and that Ms. Shepherd had informed him that the medication helped her back dramatically. He stated that, following this, he did not see Ms. Shepherd again for approximately a full year with regard to back pain and that, when he did see her again, she informed him that she was then experiencing pain in her back due to an incident where she had fallen asleep on the floor of her house.
Sheldon Shepherd, Ms. Shepherd's husband, testified that his wife had received cuts and bruises as a result of the accident. He also stated that she was very sore following the accident and had to sleep in a chair for quite some time due to her discomfort. In his opinion, Ms. Shepherd's back neither hurt her continuously nor limited her activities prior to the accident. On cross-examination, Mr. Shepherd testified that he was aware of the fact that, prior to the accident, his wife had undergone two previous carpal tunnel syndrome surgeries and four trigger release surgeries relating to conditions in her hands and fingers. He also stated that he and his wife have been married for over twelve years and that she had back problems prior to the time that they married. Mr. Shepherd stated that his wife was previously a hairdresser and that, currently, she works in an office.
Ms. Shepherd testified that she is an administrative assistant, where she is involved in some repetitive motion activities, and that she used to be employed as a hairdresser, which involved repetitive motion activities. Ms. Shepherd also testified that she experienced a lot of pain in relation to the automobile accident. She stated that, in addition to problems with her back, knee, and thumb, she had to have a tooth extracted and was not able to work for a period of time, causing her to lose wages.
Ms. Shepherd testified that, prior to the accident, she merely had occasional backaches but that now she had a continuous backache that affected her quality of life. On cross-examination, she admitted that she had experienced backaches for approximately eighteen to twenty years and that she had sought medical attention for her pain prior to the accident. She stated that she had been diagnosed with a degenerative joint disease before the accident occurred. She also conceded that, following the accident, she was discharged from physical therapy for her back due to five consecutive no-shows.
With regard to her thumb, Ms. Shepherd testified that she was not aware of her thumb pain until she began to work again following the accident. She stated that she had undergone four trigger release surgeries on her ring and middle fingers and two carpal tunnel surgeries, all before the accident. She acknowledged that these procedures had been necessary due to her repetitive motion activities. Ms. Shepherd stated that she first noticed her knee problem approximately one month after the accident. Later, she remembered that, prior to the accident, she had seen a doctor in relation to pain that she was experiencing in her knees.
After reviewing the record and the contradictory evidence with regard to Ms. Shepherd's ailments, this court finds that the jury did not lose its way and did not create a miscarriage of justice in awarding Ms. Shepherd $14,000. In doing so, we conclude that the jury's verdict was not against the manifest weight of the evidence. Ms. Shepherd's first assignment of error is overruled.
 Second Assignment of Error "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFF-APPELLANT BY NOT SUBMITTING THE PLAINTIFF-APPELLANT'S REQUESTED INTERROGATORIES TO THE JURY IN COMPLIANCE WITH OHIO CIVIL RULE 49(B)."
In the second assignment of error, Ms. Shepherd asserts that the trial court erred in not submitting to the jury the proposed interrogatories that she had written. Ms. Shepherd asserts that it was error because a trial court had a mandatory duty to submit her written interrogatories to the jury upon her request.[1] We disagree.
"The requirement of Civ.R. 49(B) that a court `shall submit written interrogatories to the jury * * * upon the request of any party prior to the commencement of the argument' is mandatory, but the further requirement of the rule that `the interrogatories shall be submitted to the jury in the form that the court approves' reposes discretion in the trial court to review and approve the appropriateness and content of proposed interrogatories." (Alterations sic.) Ragone v. Vitali Beltrami, Jr., Inc. (1975), 42 Ohio St.2d 161, paragraph one of the syllabus.
Further, Civ.R. 49(B) "does not render the trial judge a mere conduit who must submit all interrogatories counsel may propose. Authority is still vested in the judge to control the substance and form of the questions[.]" Id. at 165. Consequently, "[t]here is no requirement that the trial court submit interrogatories identical to those suggested by the requesting party." Pancoe v. Dye (Oct. 21, 1992), 9th Dist. Nos. 15546, 15583.
Based upon case law, and due to the limited nature of Ms. Shepherd's argument, this court finds that Ms. Shepherd did not have an automatic right to have her proposed interrogatories submitted to the jury; rather, the trial court retained discretion to both review and approve the appropriateness and content of her proposed interrogatories. See, generally, Ragone at paragraph one of the syllabus. As Ms. Shepherd has clearly limited her argument to this assertion, her second assignment of error is overruled.
Ms. Shepherd's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
CARR, P.J., WHITMORE, J. CONCUR.
[1] In her reply brief, and not in reply to Mr. Freeze's brief, Ms. Shepherd raised the new argument that the trial court erred in failing to submit any interrogatories to the jury. Pursuant to Loc.R. 7(C), reply briefs are restricted to matters in rebuttal of the appellee's brief. "Proper rebuttal is confined to new matters in the appellee's brief." Loc.R. 7(C). An appellant may not use a reply brief to raise new assignments of error or new issues for consideration; rather, the reply brief is "merely an opportunity to reply to the brief of the appellee."In re Songer (Oct. 3, 2001), 9th Dist. No. 01CA007841, quoting Sheppardv. Mack (1980), 68 Ohio App.2d 95, 97, fn. 1. Consequently, we decline to address this new issue because it is not properly before this court.