**CLARK et al., Appellants,**

v.

**DOE; Florez, Appellee.**

[Cite as *Clark v. Doe* (1997), 119 Ohio App.3d 296.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–950667.

Decided April 23, 1997.

298

*G. Ernie Ramos, Jr.,* for appellants.

*Jacobson, Maynard, Tuschman & Kalur Co., L.P.A.,* and *John A. Simon; James P. Triona* and *Carrie A. Foliano,* for appellee.

MARIANNA BROWN BETTMAN, Presiding Judge.

This is an appeal from a medical malpractice action brought by Kenneth Clark ("Clark") and his wife Rhonda Clark.

On September 2, 1990, Clark was riding on his motorcycle when his right leg hit a parked car. As a result, Clark sustained an open, comminuted fracture of the tibia and fibula. Clark was taken to Clinton Memorial Hospital, where he was treated in the emergency room and admitted for two days. While at Clinton Memorial, Clark's leg was put in a cast.

On September 6, 1990, Clark visited Dr. Raul Florez, an orthopedic surgeon. Florez scheduled surgery for September 14, 1990, in order to conduct an internal fixation of the fracture with an intermedullary nail. On the date of the scheduled surgery, the cast was removed, and an infection appeared to be present in the wound. The surgery was canceled. Clark was then placed in a different, long-leg cast.

On September 18, 1990, the cast was "wedged" in order to improve alignment. The cast remained on until October 5, 1990, when Clark's leg was recasted. On November 28, 1990, the cast was removed, and Clark was placed in a long-leg air cast. According to Florez, Clark's healing was excellent, and "nature was doing what it was supposed to do." On December 11, 1990, Clark's leg was placed in a long-leg brace to provide more support.

In February 1991, the brace was removed in order to speed up the healing. On March 4, 1991, Florez's chart indicated that Clark complained that his leg was crooked. However, Florez believed the leg was in satisfactory alignment.

On April 2, 1991, Florez noted a ten–degree valgus (meaning outward; away from the body) deformity in Clark's leg that he felt required correction by way of an osteotomy with a bone graft and insertion of an intramedullary nail. Clark was also advised to continue his routine activity. On April 23, 1991, Clark came in for x-rays, and the osteotomy was scheduled.

On June 3, 1991, Florez performed an osteotomy and inserted an intramedullary nail into Clark's leg. On June 27, 1991, Clark's alignment was measured at a six–to–seven–degree valgus deformity. By early 1992, Clark's valgus deformity was in the ten–to eleven–degree range. Clark continued treatment with Florez until early 1992 when he switched to Dr. Mark Siegel. At this time, Clark's degree of malalignment was in the twelve–degree range.

Clark and his wife filed a medical negligence claim against Florez and John Doe.[1] The Clarks alleged that Florez failed to intervene in a timely and

---

1. The John Doe defendant was never identified. The only defendant in the appeal is Florez.

appropriate fashion to correct the malalignment, which resulted in permanent injury to Clark's leg. The case was tried before a jury, which rendered a verdict in favor of Florez. The Clarks ("appellants") appeal, raising five assignments of error. Despite the fact that our disposition of the second assignment of error determines this appeal, we will address the other assignments of error to assist in a retrial of this case. We will consider the assignments of error in their logical order.

## SCOPE OF EXAMINATION

Appellants' third assignment of error is that the trial court improperly excluded their expert's explanations of his answers during cross-examination. Appellants argue that in three separate instances the trial court sustained defense counsel's objections and struck Scheller's explanation of his answers from the record, and that this misled and confused the jury and resulted in prejudicial error. Based on our examination of Scheller's testimony, what was stricken was either not objected to, nonresponsive, or hearsay. We overrule this assignment of error.

## JURY INSTRUCTIONS

Appellants' first assignment of error is that two portions of the jury instructions given by the trial court were prejudicially erroneous.

The first part of the jury charge about which appellants complain consisted of instructions on proximate cause and intervening and unforeseeable causes.[2] The instructions were given verbatim as requested by Dr. Florez in proposed jury instruction number ten, and appellants argue that they were misleading and confusing.

These instructions, taken from the syllabus of a 1983 case involving the negligence of an automobile mechanic,[3] were dense and hard to follow; however, they were technically correct. The court would have done better, had the issue

---

2. The jury instructions read as follows:

"In determining whether an act or omission was a proximate cause, or remote cause, you may consider whether it created an active force that continued to the time of the injury, or created a condition harmless in itself unless acted upon by another unforeseeable cause for which the defendant would not be responsible.

"Where there intervenes between a person who creates a hazard, and an injury occurring after the hazard was created, another conscious and responsible person or entity, which other person or entity could have and should have eliminated the hazard, the person who created the hazard must be relieved from liability.

"In that situation, a breach in the chain of causation takes place which operates to absolve the person who created the hazard from liability."

3. *Cascone v. Herb Kay Co.* (1983), 6 Ohio St.3d 155, 6 OBR 209, 451 N.E.2d 815.

been properly before the jury, to use the standard Ohio Jury Instructions on intervening and superseding causes. 1 Ohio Jury Instructions (1996), Section 11.30.

We agree with appellants that there was no evidence of any superseding or intervening negligence warranting any instruction on this subject. However, because the jury answered a special interrogatory finding that Dr. Florez was not negligent, these instructions were harmless error. Civ.R. 61.

Appellants also argue that the jury instructions given on different methods of treatment served to mislead and confuse the jury, and constituted prejudicial error. Appellants again argue that no instruction on this subject was warranted, because the case dealt with "the timeliness and technical execution of the particular procedures used."

Although Dr. Florez argues that appellants failed to raise the issue below, it appears from the record that appellants did object to this instruction and thus have not waived their right to appeal this issue.

We agree with Florez that different methods of treatment were discussed in this case and, therefore, that an instruction on this subject was not inappropriate.

The trial court gave two instructions on different methods of treatment, one correct and one incorrect. The first instruction is from the standard 3 Ohio Jury Instructions (1996), Section 331.02, paragraph 3, and is a correct statement of the law.[4] It informs the jury that there may be more than one method of treatment, and that the selection of one over the other by the defendant doctor is not *in and of itself* negligent. The instruction ends with the admonition that the jury still must decide whether the use of that treatment comported with the standard of care. In short, the instruction properly informs the jury that a doctor cannot be held liable simply for his selection of a different procedure than another doctor might have used. However, the doctor can still be held liable if he performs that procedure negligently.

Later in its charge, the court gave another instruction on the same subject. This instruction was given by the court exactly as requested in Florez's proposed instruction number 25, entitled "Two Schools of Thought."[5] This second instruction tells the jury that as long as the doctor chooses and follows a

---

4. The instruction reads:

"Although some other physician or surgeon might have used a method of treatment or procedure different from that used by Dr. Florez, the circumstance will not, by itself without more, prove that Dr. Florez was negligent. The mere fact that Dr. Florez used an alternative method of treatment or procedure is not by itself, without more, proof of negligence."

5. This jury instruction reads as follows:

recognized method of treatment, he is not negligent, even though another doctor would have chosen a different treatment. This is incorrect.

■ In *Kurzner v. Sanders* (1993), 89 Ohio App.3d 674, 627 N.E.2d 564, this court held prejudicially erroneous a jury instruction that a doctor could not be found liable for an honest error or mistake in judgment. In *Kurzner*, we noted that a doctor could indeed be exercising his best clinical judgment, be acting in total good faith, and still be negligent. Similarly, a doctor can choose to perform an undeniably accepted procedure, albeit a different one from that which another doctor would choose, and perform the approved procedure negligently. In this event, the doctor is still liable. Just because a doctor uses an accepted procedure does not mean he does so correctly. The first instruction makes this clear. The second does not and, therefore, is erroneous.[6]

■ We must still decide whether this instruction was prejudicially erroneous. We are mindful, as we were in *Kurzner*, that we must look to the totality of the jury charge in determining whether a portion of it is harmless or prejudicial. *State v. Price* (1979), 60 Ohio St.2d 136, 14 O.O.3d 379, 398 N.E.2d 772, paragraph four of the syllabus. In this appeal it is a close question because the instructions go to the heart of the case—whether Florez was negligent. However, in reviewing the instructions in their entirety, we are persuaded that the court clearly and correctly instructed the jury on the subject of negligence and medical negligence several times. Thus, in sum, we expressly disapprove Florez's instruction on two schools of thought, but hold that giving it to the jury was harmless error in this case. Appellants' first assignment of error is overruled.

## JURY INTERROGATORIES

In appellants' fifth assignment of error, they argue that the trial court's refusal to submit eight of their eleven proposed interrogatories constituted prejudicial

---

"You are instructed that the law recognizes that there may be different opinions and methods of examination and treatment for a particular condition or ailment. The law does not favor one recognized method of treatment to the exclusion of others. If, therefore, you find by a preponderance of the evidence that the care and treatment rendered to plaintiff by the Defendant physician was in accord with a recognized opinion in the field of orthopaedic surgery for examining and treating Plaintiff's tibia, fibula fracture, the following of such recognized opinion or method does not constitute negligence or malpractice even though another physician may believe that a different opinion or method of examination or treatment is preferable."

As authority for this instruction, appellee cited 3 Ohio Jury Instructions (1996), Section 331.02, and 61 American Jurisprudence 2d (1981) 342, Physicians and Surgeons, Section 209. The former is incorrectly cited. The latter has been substantially disapproved by this court in *Kurzner v. Sanders* (1993), 89 Ohio App.3d 674, 627 N.E.2d 564.

6. We also agree with appellants that the instructions should not begin with "the law recognizes" and "the law does not favor." We discourage this usage.

error.[7]

Pursuant to Civ.R. 49(B), while it is mandatory that the court submit to the jury properly drafted interrogatories, the trial court retains discretion to reject interrogatories that are inappropriate in form or content. *Ragone v. Vitali & Beltrami, Jr., Inc.* (1975), 42 Ohio St.2d 161, 71 O.O.2d 164, 327 N.E.2d 645, paragraph one of the syllabus. A court may reject a proposed interrogatory that is ambiguous, confusing, redundant, or otherwise legally objectionable. *Ramage v. Cent. Ohio Emergency Serv., Inc.* (1992), 64 Ohio St.3d 97, 592 N.E.2d 828, paragraph three of the syllabus. The standard of review of a trial court's decision whether to submit a proposed interrogatory is abuse of discretion. *Freeman v. Norfolk & W. Ry. Co.* (1994), 69 Ohio St.3d 611, 614, 635 N.E.2d 310, 313, citing *Ragone, supra,* at paragraph one of the syllabus.

Regarding appellants' eight proposed interrogatories, we hold that the trial court properly exercised its discretion in not submitting them, as they went too far beyond the scope of the basic determinative issues. Proper jury interrogatories must address determinative issues. *Ramage,* 64 Ohio St.3d at 107, 592 N.E.2d at 836. Determinative issues are " 'ultimate issues which when decided will definitely settle the entire controversy between or among the parties so as to leave nothing for the court to do but to enter judgment for the party or parties in whose favor such determinative issues have been resolved by the jury.' " *Ziegler v. Wendel Poultry Serv., Inc.* (1993), 67 Ohio St.3d 10, 15, 615 N.E.2d 1022, 1028, quoting *Miller v. McAllister* (1959), 169 Ohio St. 487, 494, 8 O.O.2d 485, 490, 160 N.E.2d 231, 237.

Here, the proposed interrogatories did not go to the determinative issue in this case—whether Florez breached the accepted standard of care. There was

---

7. The eight interrogatories rejected by the trial court are as follows:

"1. Did defendant stabilize the plaintiff's fracture between September 18, 1990 the time of the cast wedging and June 3, 1991 the time of the nailing procedure?

"2. Did defendant stabilize the plaintiff's fracture between June 3, 1991 and plaintiff's last office visit with defendant in January 1991?

"3. Did plaintiff's angle of deformity get larger between September 18, 1990 and November 28, 1990 when the cast was removed?

"4. Did defendant do anything to correct plaintiff's deformity between September 18, 1990 and November 28, 1990 when the cast was removed?

"5. Did plaintiff's angle of deformity get larger between November 28, 1990 when the cast was removed [and] June 3, 1991 the time of the nailing procedure?

"6. Did defendant do anything to correct plaintiff's deformity between November 28, 1990 when the cast was removed [and] June 3, 1991 the time of the nailing procedure?

"7. Did plaintiff's angle of deformity get larger between June 3, 1991 and plaintiff's last office visit with defendant in January 1991?

"8. Did defendant do anything to correct plaintiff's deformity between June 3, 1991 and plaintiff's last office visit with defendant in January 1991?"

no mention of breach of duty or causation in these interrogatories. Even if the jury were to have answered these eight interrogatories against Florez, the answers would not have definitely settled the controversy between the parties. Rather, the interrogatories sought matters that were nondeterminative and evidentiary in nature, similar to those disapproved in *Freeman* and *Ziegler*, *supra*. Thus, we hold that the trial court did not abuse its discretion in refusing to submit appellants' eight proposed interrogatories.

Appellants also object to the submission of Florez's Interrogatory No. 4, which reads as follows:

"State below the manner in which defendant Raul Florez, M.D. was negligent in his care and treatment of Plaintiff Kenneth Clark."

Appellants argue that this interrogatory was virtually identical to an interrogatory expressly disapproved in *Ramage*, and that similarly it should not have been submitted to the jury. We disagree. In *Ramage*, because only one act of negligence was alleged and the jury's function was to decide that single issue, an interrogatory was not needed. In this case, there were different acceptable methods of treatment, and different views presented on the aspects of Florez's care. In such a case, it is proper to test the verdict with such an interrogatory. *Davison v. Flowers* (1930), 123 Ohio St. 89, 174 N.E. 137, paragraph four of the syllabus. Further, Florez's Interrogatory No. 4 was similar to the interrogatory approved in *Ragone, supra*, 42 Ohio St.2d 161, 71 O.O.2d 164, 327 N.E.2d 645, paragraph two of the syllabus. The content of Interrogatory No. 4 was appropriate because it would have definitely resolved the controversy between the parties and it addressed a determinative, rather than an evidentiary, issue.[8]

We hold that the trial court did not abuse its discretion in submitting this interrogatory. We, therefore, overrule this assignment of error.

## CLOSING ARGUMENT

In their second assignment of error, appellants argue that the trial court abused its discretion in overruling their objection to Florez's counsel's closing arguments. Appellants take exception to two particular parts of the closing argument.

First, appellants assert that several remarks made by Florez's counsel in closing argument improperly attacked the honor and reputation of appellants' expert witness, Scheller.

---

8. It is also significant that the jury did not find that Florez deviated from the accepted standards of care and, thus, did not even reach Interrogatory No. 4.

Florez's counsel made the following comments in closing:

"First off, Dr. Scheller got on the stand and he told you that he made $1,000 an hour; that compensated his time out of the office. I figured that out, with a two-week vacation working 40 hours a week he makes 2 million dollars a year is what he is claiming. That's what he is saying. I don't believe that he makes 2 million dollars a year. This is a money-making venture for him. That's what he is doing."

At that point appellants' counsel objected, but the court overruled the objection. Appellants now argue that the comments were prejudicial, and that the prejudice was reinforced when Florez's counsel made these additional remarks during closing:

"And Dr. Harper came in for me and told you that I was paying him; he said that. Mr. Ramos asked him the question, and Mr. Ramos didn't ask him the next question, how much. I can tell you why, the answer to that one, because it's not a thousand dollars an hour."

Counsel for appellants did not object to this statement. Appellants argue, however, that this remark enhanced the prejudicial effects of the earlier argument, and that the trial court should have intervened *sua sponte* and ordered that this statement be stricken. We agree with both of appellants' arguments on this point.

An expert's bias and pecuniary interest are fair subjects for both cross-examination and argument. *Calderon v. Sharkey* (1982), 70 Ohio St.2d 218, 24 O.O.3d 322, 436 N.E.2d 1008. However, the permissible bounds of fair argument are not unlimited, and when they are crossed, the violation must be appropriately addressed. The determination of whether the bounds of permissible argument have been exceeded is, in the first instance, a discretionary function to be performed by the trial court. *Pang v. Minch* (1990), 53 Ohio St.3d 186, 194, 559 N.E.2d 1313, 1321. See, also, *Jackson v. Booth Mem. Hosp.* (1988), 47 Ohio App.3d 176, 180, 547 N.E.2d 1203, 1207. The trial court's determination will not be reversed absent an abuse of discretion. *Pang*, 53 Ohio St.3d at 194, 559 N.E.2d at 1321.

Scheller did testify that he charged $1,000 per hour for his time, and that he arrived at that amount by trying to determine how much time he missed from taking care of patients and surgery, and what he missed in income. However, he also specifically stated that he only reviewed one or two legal cases each year. For defense counsel to argue that Scheller would have to make $2,000,000 a year to charge $1,000 per hour, and that he was testifying because it was a "money-making venture for him" crosses the line. These remarks were inappropriate and a deliberate attempt to discredit Scheller's opinion by disparaging him.

The entire essence of a medical malpractice claim is whether the care and treatment by the defendant doctor fell below the appropriate standard of care. With few exceptions not relevant here, the *only* way to prove this is through expert testimony. *Bruni v. Tatsumi* (1976), 46 Ohio St.2d 127, 75 O.O.2d 184, 346 N.E.2d 673. It goes unacceptably beyond fair trial tactics to attempt to discredit an expert's opinion by disparaging the expert in this way. There is nothing in this doctor's resume or in his testimony about the use of his professional time to justify this remark. The trial court abused its discretion in overruling appellants' objection to this argument.

As to Florez's expert, Dr. Harper, he did not "come in" for defense counsel, nor was counsel paying him. He was testifying as an expert witness for Florez, and at Florez's expense. Harper did not testify about how much he charged for his time. No one asked him about it. Therefore, it was inexcusable for Florez's counsel to tell the jury that the reason was because "it's not a thousand dollars per hour." There is not a scintilla of evidence on this point in the record. The subliminal message is that the appellants' expert is a greedy man who just does this for the money, so his opinion should be considered in that vein. It serves to paint the appellants' expert in an unprofessional light, without substantiation, and we agree that it enhances the prejudicial effect of the earlier remarks.

Medical malpractice cases engender strong emotion, and there is nothing wrong with passionate argument. Two highly qualified expert witnesses, each with excellent credentials, honestly disagreed about the standard of care and whether Florez breached it. Argument is about the evidence and fair inferences drawn from that evidence. When argument spills into disparagement not based on any evidence, it is improper. *Cusumano v. Pepsi–Cola Bottling Co.* (1967) 9 Ohio App.2d 105, 38 O.O.2d 132, 223 N.E.2d 477. When an argument is based on facts not in evidence at all, in the absence of an objection, it is the obligation of the court to intervene *sua sponte* and instruct the jury to disregard the improper argument. See *Jones v. Macedonia–Northfield Banking Co.* (1937), 132 Ohio St. 341, 8 O.O. 108, 7 N.E.2d 544 (the trial judge has an affirmative duty to see that counsel do not create an atmosphere surcharged with passion and prejudice, and the court must stop improper argument and require counsel to proceed in an orderly and lawyerlike manner). An admonition in the jury charge that what lawyers say is not evidence does not cure the fact that the argument itself is improperly based on facts not in evidence.

Since this entire case turned upon which expert the jury believed, we cannot say that the error was not prejudicial. If there is room for doubt on this

issue, doubt must be resolved in favor of the defeated party. *Warder, Bushnell & Glessner Co. v. Jacobs* (1898), 58 Ohio St. 77, 50 N.E. 97.

We are reluctant to reverse a case because of improper closing argument. Nevertheless, if such matters are to have meaningful appellate review, we are obliged to do so when the line of propriety is crossed by counsel for either party. Today we send the message that this sort of argument can be more than nonprejudicial error, it can warrant a reversal. This assignment of error is sustained.

## WEIGHT OF THE EVIDENCE

Appellants' fourth assignment of error is that the verdict was against the manifest weight of the evidence. Based upon this court's decision regarding appellants' second assignment of error, this assignment is moot and need not be addressed. App.R. 12(A)(1)(c).

The decision of the Hamilton County Court of Common Pleas entering judgment on the jury's verdict is reversed, and the cause is remanded for a new trial.

*Judgment reversed*
*and cause remanded.*

DOAN and GORMAN, JJ., concur.