I respectfully dissent from the majority's finding that the trial court did not abuse its discretion by overruling the Syphaxes' motion for a new trial. I find that the closing arguments by Susan's counsel were outside the boundaries of permitted argument. The trial court does not have the discretion to permit such argument and because the trial court failed to take curative action, a new trial is warranted.
The majority correctly points out that counsel is given wide latitude in closing arguments, and that the trial court is given the primary role of determining when counsel's arguments overstep the bounds of propriety. Pang v. Minch (1990), 53 Ohio St.3d 186, paragraphs two and three of the syllabus. Counsel may argue all reasonable deductions and inferences from the evidence and may argue evidence of a witness' bias where evidence supports such an argument. Clark v. Doe (1997), 119 Ohio App.3d 296, 307; Dillonv. Bundy (1991), 72 Ohio App.3d 767, 773.
Counsel though may not make arguments which are misleading or not supported by the evidence. Drake v. Caterpillar Tractor Co. (1984), 15 Ohio St.3d 346, 347-348. Counsel may not comment upon incompetent, inadmissible, or improper evidence which would be patently harmful to the opposing party. Dillon,72 Ohio App.3d at 772. Nor may counsel make unwarranted attacks upon opposing counsel. Id. When attacking the credibility of an expert witness, counsel may not "paint the * * * expert in an unprofessional light, without substantiation." Clark,119 Ohio App.3d at 307.
The trial court has the duty to control the arguments of counsel and prevent unwarranted and prejudicial arguments.Cusumatino v. Pepsi-Cola Bottling Co. (1947), 9 Ohio App.2d 105,122. In controlling arguments, the trial court must see that substantial justice is administered and that the parties present their cases in accordance with established principles of justice.In re Appropriation of Easement for Highway Purposes: Director ofHighways v. Bennett (1962), 118 Ohio App. 207, 210. Even where no objection is made to counsel's arguments, where those arguments so grossly and persistently abuse the privilege given to counsel in arguments, the trial court must sua sponte take action to nullify the prejudicial effect of the arguments. Snyder v. Stanford
(1968), 15 Ohio St.2d 31, paragraph one of the syllabus; Clark,119 Ohio App.3d at 307; Dillon, 72 Ohio App.3d at 772. Abuse of the privilege given in arguments may be found where counsel persists in attacking the personal integrity of a witness or opposing counsel through "unfounded charges to the manifest prejudice of [the] opposing part[y]." Snyder,15 Ohio St.2d at 36; Dillon, 72 Ohio App.3d at 772.
In this case, Susan's counsel did attack the evidence which the Syphaxes presented. But these comments on the evidence comprised only a limited portion of counsel's arguments. Instead, counsel devoted the majority of his closing argument to attacking the personal and professional integrity of the Syphaxes' attorneys and treating physicians. Although the Syphaxes now only specifically point out limited portions of these extensive personal attacks, when the entire context of the statements is considered, it is not possible to justify the majority's conclusion that the comments did not so prejudice the Syphaxes as to require a new trial.
Susan's counsel made numerous patently incorrect or unsupported comments throughout his argument. He strongly implied that Dr. Romano was biased because he had a financial stake in the case's outcome, and argued that "he makes a whole slew of money" from cases such as the instant one. There was no evidence in support of this statement. In fact, the evidence demonstrated the opposite conclusion. Barbara signed a medical agreement stating that, if she had unpaid bills with Dr. Romano, any settlement she may receive must be used to pay those bills. Barbara had no unpaid bills. Thus, Dr. Romano could not have had a financial stake in the case.
More importantly, Susan's counsel stated that Barbara's injuries were "created for you to present at trial in the lawyer's office." Counsel characterized Barbara's injuries and the Syphaxes' case as "manufactured" and "conjured up in the lawyer's office." Counsel suggested that Dr. Weber was coached to perjure himself.
But by far, counsel's most egregious comments were reserved for attacks upon the personal and professional integrity of the Syphaxes' attorneys and physicians. Counsel stated regarding Dr. Romano that
 I want you to ask whether you think that kind of person is the kind of person that you want to rely upon in deciding the facts and the evidence in this case? That is a hired gun type witness; traveling all around doing this sort of thing. That is not the kind of person that I suggest you should be relying upon in a court of law.
 Throughout his argument, counsel implied that Dr. Weber was coached to perjure himself and that Dr. Romano perjured himself and knowingly diagnosed nonexisting symptoms and medical conditions. Counsel also repeatedly implied that the Syphaxes' attorneys were instrumental in "manufacturing" the case, to the point of stating
 The problem with the claim is, because you got to go to the low back because everything else here has already been the subject of some injury in the past, the problem with low back claim though is simply this. There isn't enough evidence to make it fly. There isn't enough evidence there to document some objective basis beyond Miss Syphax's own testimony that there was ever an injury to that part of the body.
 So, what are you going to do? Well, what you got to do is you got to think up some claim, some diagnosis that doesn't require MRI's or objective findings or x-ray or something like that to support it; something that's not going to be medically demonstrable by some test or diagnostic study; something like that. And guess what it is ladies and gentlemen? It's fibromyalgia.
Finally, counsel closed with a direct emotional appeal to the jury, encouraging the jury to make their decision based upon negative emotional responses to the Syphaxes:
 And there's one more point that I want to make to you ladies and gentlemen before I sit down. The Judge indicated, when we and you folks first came into this courtroom, that this was the greatest system in the world. But it's only the greatest system if you let it work the proper way. Pardon my emotion. It doesn't work the proper way if you let people like this and Dr. Thomas Romano come in here and give the system a bad name. And I suggest to you that it is your duty and your responsibility to not let that happen in this case. Do not let that happen in this case.
The majority correctly points out that neither the trial court nor this court should lightly consider overturning the jury's verdict based upon counsel's arguments. But, as in this case, where counsel's comments are beyond the boundaries of permitted argument and prejudicial to the complaining party, the trial court must take action to preserve the proper administration of justice. Snyder, 15 Ohio St.2d at paragraph one of the syllabus.
Although the majority states that it does not condone counsel's arguments, even mentioning that some comments were "unprofessional," the majority refuses to acknowledge the prejudicial nature of these comments. Although any inadequacy of an award is not, by itself, evidence of prejudice, it is not difficult to understand the jury's verdict in light of counsel's arguments. Counsel made a point of accusing the Syphaxes' attorneys of being every negative stereotype of personal injury plaintiff's attorneys. This included the accusation that the Syphaxes' claim was manufactured in their attorneys' office, and the suggestion that the Syphaxes' attorneys had suborned perjury from Barbara, Dr. Romano, and Dr. Weber. Susan's counsel stereotyped Dr. Romano as a hired gun who had a direct financial interest in the case, to the point of accusing Dr. Romano of falsely diagnosing symptoms and conditions and helping to manufacture the suit. Susan's counsel provided no evidence in support of these arguments. Instead, he re-emphasized these unsupported innuendoes and accusations throughout most of his argument.
Counsel finished with an obvious and wholly improper appeal to the jury. He called on the jury to base its verdict against the Syphaxes on a judgment that they were dishonest and bad people, "people like this and Dr. Thomas Romano," and not upon the evidence presented. Such argument is improper in every respect, and this court should do more than simply "not condone" such flagrantly unprofessional arguments.
The nature of the comments is only further highlighted when they are considered in light of the Code of Professional Responsibility, which provides ethical regulations for attorneys to follow. Counsel's personal attacks not only impugned the personal character of the Syphaxes, their attorneys, and their physicians, they suggested that the Syphaxes' attorneys engaged in conduct which could result in their being suspended or disbarred from practice. See DR 1-102(A) and 7-102(A). Such arguments cannot be lightly made. In fact, if counsel believed such assertions in good faith and had information in support of such allegations, counsel had an ethical obligation to report such conduct rather than malign his fellow professionals in open court. DR 1-103(A) and 7-106(C). Here, counsel attacked his fellow professionals with only his own innuendoes to support his accusations. Such conduct deserves more condemnation than the majority's statement, "In no way is this court condoning the comments of counsel."
By not taking action to secure a fair, unprejudiced trial for the Syphaxes, the trial court exercised discretion which it did not have. The Code of Judicial Conduct mandates that the judge "require order and decorum in proceedings," Cannon 3(B)(3) of the Code of Judicial Conduct, and require that lawyers "be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others." Canon 3(B)(4) of the Code of Judicial Conduct. Not only did the trial court not require the attorneys to act in a dignified and courteous manner, the trial court neglected to ensure that justice was administered in a fair and principled manner.
The majority fails to consider these issues in its decision. If there is any circumstance under which the trial court should be found to have exercised discretion it did not have, it must be where the trial court refuses to follow the mandates of the governing Codes. In the words of the court in Grubbs v. TheCincinnati, Lawrenceburg Aurora Street Railway Co. (1914), 17 Ohio N.P. (N.S.) 356, 358:
 How can the bar expect to merit the honor and respect of the jury and the court [and the public] if, in their relationship as officers of the court and members of a great profession, they are derelict in the duty which they owe to the courts by attempting to inject into a case, either by incompetent questions or invidious argument, uncalled-for statements reflecting upon the integrity or honesty of purpose of opposing counsel; and this court [should] not hesitate to reprimand any one who deliberately would be guilty of such conduct.
Susan's counsel's conduct in closing arguments should be more strongly rebuffed than a passing statement, as done by the majority. I would find that counsel's arguments so flagrantly abused the privilege given to counsel in argument that the trial court should have granted a new trial. The trial court abused its discretion by overruling the Syphaxes' motion for a new trial. I respectfully dissent.