OPINION
On April 23, 1996, Kathleen E. Jones ("plaintiff"), underwent an appendectomy at The Ohio State University Medical Center. The surgery was performed by defendant William J. Schirmer, M.D., and the anesthesia was administered by defendants Ohio State Anesthesia Corporation and Constantin Benedetti, M.D. Plaintiff was placed under general anesthesia, and, thus, was unconscious during the surgery. For several months following surgery, plaintiff experienced severe abdominal pain, fevers, heavy and unusual menstrual periods, and uncontrolled blood sugar levels.
On February 6, 1997, plaintiff saw her gynecologist, Dr. Christopher Copeland, and reported her symptoms. Dr. Copeland performed an ultrasound scan of plaintiff's abdominal area, and noted what he believed at the time to be "a fluid filled area walled off on the posterior side of the uterus." (Copeland affidavit page 2.)
On June 21, 1997, plaintiff experienced pressure in her lower abdomen and shortly thereafter vaginally passed a "blue plastic cap." (K. Jones affidavit page 2.) She visited Dr. Copeland on June 24, 1997, reported what had happened on June 21, 1997, and showed him the expelled object. Dr. Copeland identified the object as a "color coded stopcock from an IV." (Copeland affidavit page 2.)
On June 8, 1998, plaintiff and her husband, Jeffrey Jones, filed a complaint in the Franklin County Court of Common Pleas alleging that defendants were negligent in the medical care and treatment provided in connection with the appendectomy performed on April 23, 1996.[1]
Specifically, plaintiff asserted that defendants were negligent in "allowing a foreign object to enter into her abdominal wound; failing to diagnose her continuing problems post surgery; failing to treat Plaintiff for her problems post surgery[;] and failing to adhere to the standards required of such physicians * * * [and] surgeons." Plaintiff alleged that the object that entered her abdominal wound "worked its way through Plaintiff's uterus and was discharged 14 months after her surgery." A derivative claim was asserted for loss of consortium.
On January 28, 2000, defendants filed a motion for summary judgment, supported by the affidavits of defense counsel, Mary Barley-McBride, Dr. Schirmer, Dr. Benedetti, Dr. Kristen Hardcastle, Nurse Helen Pierson and surgical technologist Cathy Jenson. In her affidavit, Ms. Barley-McBride attested that counsel for plaintiff provided defendants with color photographs of the object alleged to have been vaginally passed by plaintiff on June 21, 1997. Dr. Schirmer, Dr. Benedetti, Dr. Hardcastle, Nurse Pierson and Ms. Jenson all attested that they: (1) were present in the operating room during plaintiff's surgery; (2) reviewed the photographs provided by plaintiff; and (3) had never seen the object depicted in the photographs either in the operating room during plaintiff's surgery, or at any time in their medical careers. All five further averred that at no time during the surgery did any unintended objects enter plaintiff's appendectomy wound, including the object depicted in plaintiff's photographs. All five further attested that appropriate measures were taken to provide reasonable and necessary care to plaintiff both during and after surgery, and that the treatment and care provided plaintiff met the standard of care. In addition to the foregoing, Drs. Schirmer and Benedetti stated that a CT scan performed on plaintiff approximately two months after the surgery demonstrated neither the presence of a foreign body nor the abscess of a foreign body.
Plaintiff filed a memorandum contra defendants' motion for summary judgment on September 15, 2000, supported by her own affidavit and that of Dr. Copeland. In her affidavit, plaintiff attested that she has been a registered nurse since 1978 and is familiar with IV tubing apparatus. Plaintiff stated that after the surgery was completed, the "operative wound was left open in order to pack the wound." Plaintiff identified the "blue plastic cap" she expelled on June 21, 1997, as a stopcock used on IV tubing in the administration of medication including anesthetics. Plaintiff opined that the stopcock could only have entered her abdominal cavity during the surgery because it was the only time her peritoneal cavity was open to allow such entry. Plaintiff further opined that defendants failed to meet the applicable standard of care in allowing a foreign object such as an IV stopcock to enter her abdominal cavity during surgery.
Dr. Copeland attested that he was board certified in obstetrics and gynecology, had been engaged in the full-time practice of those disciplines for eighteen years, and in the course of his practice had performed numerous surgical procedures, including abdominal surgeries, at The Ohio State University Medical Center. Dr. Copeland corroborated the facts as alleged by plaintiff and stated that stopcocks such as the one expelled by plaintiff are "typically and customarily" used in IV tubing during surgical procedures. Dr. Copeland further stated that an IV apparatus (which typically includes several stopcocks), is always present in an operating room. He further averred that after an IV is inserted into a patient, the stopcocks are removed so that medications and anesthetics may be administered to the patient. Dr. Copeland opined, based upon plaintiff's medical history and complaints and his examination and treatment of her, that the object expelled by plaintiff was a stopcock from an IV apparatus and that such an object should have been familiar to the personnel who attended plaintiff during the surgical procedure. He further opined that what he originally believed to be a walled off fluid filled area on plaintiff's uterus was, in fact, the blue stopcock she later expelled. He further stated that he performed an ultrasound three days after plaintiff expelled the stopcock and that the area on the uterus he originally believed to be a walled off fluid filled area was gone and contained a scar such as one would expect to see as the result of a foreign object. Dr. Copeland further opined that the stopcock lodged in the uterus, penetrated into the interior of the uterus, and was expelled vaginally. He further opined that the stopcock could only have entered plaintiff's abdomen during the appendectomy surgery on April 23, 1996, since that was the only time the peritoneal cavity was open. Finally, Dr. Copeland opined that the "surgical procedure and the personnel involved in the surgical procedure, fell below the accepted standard of care in allowing such a foreign object to enter the operative wound opening" and that the subsequent failure "to diagnose and treat the problem of the foreign object, in a timely manner, from April 23, 1996 to June 21, 1997 by those responsible for her care fell below the accepted standard of care and that had the appropriate standard of care been met by the medical personnel operating on [plaintiff] none of the problems caused by the foreign object left in her body would have occurred."
In her memorandum contra, plaintiff offered the following alternative argument:
 This case, in fact, would probably invoke the evidentiary rule of res ipsa loquitor, wherein the plaintiff must only prove (1) that the instrumentality causing the injury was, at the time of injury, under the exclusive management and control of the defendants * * * and (2) that the injury occurred under such circumstances that in the ordinary course of events, it would not have occurred if ordinary care had been observed.
 When this mishap occurred, the plaintiff was unconscious, and only the defendants and nurses were in sole control and custody of the plaintiff's body. The plaintiff cannot demonstrate who is directly responsible. That is why this is a res ipsa case.
Defendants filed a reply to plaintiff's memorandum contra, asserting that the doctrine of res ipsa loquitor was inapplicable because plaintiff failed to establish that: (1) the instrumentality causing the injury was, at the time of the injury, under the exclusive management and control of defendants; and (2) the injury occurred under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed.[2] Defendants argued that: (1) none of the persons who were in the operating room during the surgery could identify the IV stopcock as being present in the operating room; and (2) although Dr. Copeland stated in his affidavit that he believed the object passed by plaintiff was an IV stopcock, he did not definitively state that the stopcock was in the operating room during plaintiff's surgery. Further, citing plaintiff's statement that the "operative wound was left open" after surgery and Dr. Schirmer's and Dr. Benedetti's statements that the post-surgical CT scan failed to reveal evidence of any foreign body in the abdomen, defendants argued that there were "numerous other means" by which the object could have entered plaintiff's abdominal cavity.
On October 5, 2000, the trial court filed a decision granting defendants' motion for summary judgment, finding that the evidence produced by plaintiff was insufficient to meet the requirements of res ipsa loquitor. Specifically, the court found that: (1) plaintiff failed to establish that the object was present in the operating room at the time of plaintiff's surgery; and (2) even if plaintiff proved the object entered plaintiff's body through her abdomen, the object could have entered during the post-surgical period when the wound was left open to drain. The court further relied upon the affidavit testimony provided by Drs. Schirmer and Benedetti, wherein they stated that a CT scan taken of plaintiff two months after the surgery failed to indicate the presence of a foreign body. Although the court noted Dr. Copeland's claim that he detected the presence of the object via an ultrasound scan taken in February 1997, the court discounted the results of the scan as having been taken a substantial time after surgery. A final judgment was entered on October 24, 2000. Plaintiff has timely appealed the trial court's judgment, advancing the following three assignments of error:
 1. The Trial Court erred in granting Defendants' Motion for Summary Judgment since his decision was against the weight of the evidence in view of the affidavit of Dr. Christopher Copeland presented by the Plaintiff.
 2. The Trial Court erred in finding that the foreign body could have entered her abdomen post surgically when the operative wound was left open, when in fact Dr. Copeland's affidavit demonstrates that the foreign object could only have entered during surgery when the peritoneum was open.
 3. The Trial Court erred in finding that there were no genuine issues of material facts, despite the affidavit of Dr. Copeland submitted by Plaintiff.
As the assignments of error are interrelated, we will address them together. Plaintiff contends that the trial court erred in granting defendants' motion for summary judgment. Specifically, plaintiff argues that the affidavit testimony offered by her medical expert, Dr. Copeland, sufficiently rebuts the evidence provided in defendants' summary judgment motion such that genuine issues of fact have been created for resolution by a jury. In addition, plaintiff argues that the court erred in basing its decision on the doctrine of res ipsa loquitor. While admitting that she raised such issue in her memorandum opposing defendants' motion for summary judgment, plaintiff now argues that such argument was raised only "by way of passing" and that plaintiff was not basing her opposition to the summary judgment motion on res ipsa loquitor.
This court reviews a trial court's decision granting summary judgment de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. Summary judgment is appropriate when: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. Mootispaw v. Eckstein (1996), 76 Ohio St.3d 383, 385, citing Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327. See, also, Civ.R. 56(C). The party moving for summary judgment bears the initial burden of demonstrating that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Dresher v. Burt (1996),75 Ohio St.3d 280, 292-293.
Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E); Mootispaw, supra. In determining whether there exists a genuine issue of fact, the evidence must be construed in favor of the nonmoving party. Hannah v. Dayton Power Light Co. (1998),82 Ohio St.3d 482, 485.
Initially, we note that we agree with plaintiff's contention that the trial court erred in basing its decision on the doctrine of res ipsa loquitor. In our view, the evidence adduced in support of and in opposition to the motion for summary judgment clearly sets forth a claim of medical malpractice capable of resolution without resorting to the doctrine of res ipsa loquitor.
In order to establish a cause of action for medical malpractice, the plaintiff "must show the existence of a standard of care within the medical community, breach of that standard of care by the defendant, and proximate cause between the medical negligence and the injury sustained." Taylor v. McCullough-Hyde Memorial Hospital (1996), 116 Ohio App.3d 595,599, citing Bruni v. Tatsumi (1976), 46 Ohio St.2d 127, 131-132. Expert testimony is generally required to prove the elements of medical malpractice whenever those elements are beyond the common knowledge and understanding of the jury. Clark v. Doe (1997), 119 Ohio App.3d 296,307; Taylor, supra. Once expert testimony is produced in support of a motion for summary judgment, the nonmoving party must submit contrary expert testimony to withstand summary judgment, unless the standard of care is so obvious that non-experts can reasonably evaluate the defendant's conduct. Deer v. River Valley Health Systems (Jan. 3, 2001), Lawrence App. No. 00CA20, unreported.
An expert witness affidavit offered in support of or in opposition to summary judgment must comply with Civ.R. 56(E), as well as with evidence rules governing expert opinion testimony, Evid.R. 702-705. Lawson v. Song (Sept. 23, 1997), Scioto App. No. 97 CA 2480, unreported. Accordingly, the affidavit must demonstrate that the affiant's opinion is based on personal knowledge; that the facts contained in the affidavit are admissible in evidence; and that the affiant is competent to testify as to the matter. Id.; Civ.R. 56(E). Further, the affidavit must set forth the expert's credentials and the facts or data considered in rendering the opinion. Id.
In the instant case, defendants presented expert testimony, by way of their own affidavits and those of the other persons present during plaintiff's surgery, containing facts supporting their assertion that defendants met the applicable standard of care in their treatment and care of plaintiff. As noted previously, all five of the persons who attended the surgery testified that the object alleged to have been passed by plaintiff was not present in the operating room during the surgery; that no unintended objects (including the object at issue) entered plaintiff's appendectomy wound during the course of the surgery; and that they had never seen such an object in the course of their medical careers. In addition, Drs. Schirmer and Benedetti attested that the object was not depicted in a CT scan performed two months after the surgery. This evidence gave rise to plaintiff's burden to produce expert testimony showing that genuine issues exist for trial. Plaintiff claims that she satisfied this burden by submitting the affidavit of Dr. Copeland. We agree.
In his affidavit, Dr. Copeland set forth his credentials and the facts he considered in rendering his opinion that defendants were negligent in their care and treatment of plaintiff. Specifically, Dr. Copeland identified the object expelled by plaintiff as an IV stopcock, "typically and customarily" used in IV tubing during surgical procedures; that an IV apparatus (including several stopcocks) is always present in an operating room; that such an object should have been familiar to all personnel who attended the surgery; and that the stopcock could only have entered plaintiff's abdomen during the appendectomy surgery, as that was the only time the peritoneal cavity was open. Dr. Copeland further opined that the stopcock entered the peritoneal cavity, lodged in the uterus, penetrated into the interior of the uterus and was expelled vaginally. He further stated that the ultrasound scan he performed on plaintiff's uterus three days after the object was expelled depicted uterine scarring such as would be expected from housing a foreign object. Dr. Copeland opined that based upon these facts, defendants fell below the accepted standard of care in allowing an IV stopcock to enter plaintiff's appendectomy wound and in failing to diagnose and treat the problems caused by the stopcock. Dr. Copeland further opined that such failure to adhere to the applicable standard of care was the proximate cause of the post-surgical problems suffered by plaintiff.
Contrary to defendants' argument, we do not find that Dr. Copeland's opinion is the result of the impermissible stacking of inferences. Dr. Copeland's conclusions are based on inferences drawn from facts in evidence and his knowledge of surgical procedures and the apparatus used therein gained during eighteen years of practice as an obstetrician-gynecologist at the hospital where the surgery was performed. The facts, coupled with Dr. Copeland's knowledge as an expert and his ruling out of the other possible causes of plaintiff's injury, provided the basis for his inference that the IV stopcock entered plaintiff's abdominal cavity during surgery, penetrated into the interior of her uterus, and was expelled vaginally by plaintiff some fourteen months after surgery.
Construing the evidence most strongly in favor of plaintiff, we find that reasonable minds cannot come to but one conclusion adverse to plaintiff, since the affidavit of her expert witness presents genuine issues of material fact involving defendants' care and treatment of plaintiff. Specifically, we find that Dr. Copeland's statements present a basis from which a reasonable mind could conclude that: (1) defendants deviated from the proper standard of care by allowing the stopcock to enter plaintiff's abdominal cavity during surgery; and that (2) but for defendants' deviation, plaintiff would have suffered no post-surgical injuries. Accordingly, plaintiff's assignments of error are well-taken.
For the foregoing reasons, all three of plaintiff's assignments of error are sustained, the judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court for further proceedings in accordance with law and consistent with this opinion.
 ________________________ PETREE, J.
BRYANT, P.J., and DESHLER, J, concur.
[1] The complaint also named Raymond Gagliardi, M.D., as a defendant in the action. The claims concerning Dr. Gagliardi have been resolved.
[2] Morgan v. Children's Hosp. (1985), 18 Ohio St.3d 185, 187.