{¶ 1} Plaintiff-appellant Benedict S. Kowalski appeals after a jury trial in the Cuyahoga County Court of Common Pleas. For the following reasons, we reverse and remand for a retrial.
 {¶ 2} On October 30, 2003, Kowalski, Administrator of the Estate of Beverly Kowalski, filed this medical malpractice action against Dr. Karim Lopez and Comprehensive Family Medicine, LLC, and Dr. Thayne R. Alred and his medical group, Emergency Care Specialists, Inc.[1]
Kowalski alleged that the defendants deviated from the accepted standard of care with their care and treatment of his wife, Beverly Kowalski, deceased, by failing to diagnose her coronary artery disease, from which she died on November 6, 2002.
 {¶ 3} On September 5, 2002, Mrs. Kowalski called the office of her family physician, Dr. Lopez, asking to be seen that day, complaining that she had "chest pain, congest[ion], [and was] coughing up yellow stuff." At her appointment, Dr. Lopez reported that Mrs. Kowalski indicated that she had back pain that started the day before and worsened that day. She had chest tightness and sharp pains that were worse with coughing. She indicated that the pain was not exertional. She had some coughing with phlegm. She denied any fever, chills, nausea, vomiting, or other gastrointestinal symptoms. She denied a runny nose or sneezing. After a physical exam, Dr. Lopez determined that her heart rate was regular, her pulse was normal, *Page 5 
her heart sounds were normal, and her ear drums, as well as her lungs, were clear. Because of her prior history, her current symptoms, and the fact that she was a smoker, she was diagnosed with bronchitis and given antibiotics. In addition, a chest x-ray was ordered to rule out pneumonia.
 {¶ 4} On November 6, 2002, at 4:44 a.m., Mrs. Kowalski presented to the emergency room at Marymount Hospital, complaining that she woke from a sound sleep with back pain between her shoulder blades that radiated down the right arm, and chest pain or midsternal pressure; in addition, she had coughed so hard she had vomited. She took Motrin for the pain but to no avail. She rated her pain at an eight out of ten. She reported that she was thirty-nine years old, on birth control, that she drank a "six-pack daily" and smoked one and one-half packs of cigarettes a day. She did not advise anyone that her brother had died at the age of thirty-two of a heart attack.
 {¶ 5} Dr. Alred testified that Mrs. Kowalski reported that she developed a cough and congestion approximately a month earlier. She indicated that she improved with the antibiotic; however, the cough returned after she went off the antibiotic. She said she had been coughing up yellowish sputum. She had coughed so hard that she vomited that morning. She indicated that when she coughed, she got a very sharp pain both in the front of the chest and the back. She denied a fever *Page 6 
or shortness of breath. Her vital signs were stable; her temperature was 97.4; she was alert, and did not appear to be in any distress. She had some wheezing in both bases of the chest, but her lungs were otherwise clear. She had a regular heart rate and rhythm.
 {¶ 6} A chest x-ray was ordered. There was no evidence of infiltrate or congestive heart failure. The heart was normal size. She was given an albuterol aerosol (breathing treatment) and reported she felt much better after the treatment. Her lungs were checked, and they sounded clear. She was diagnosed with acute bronchitis and sent home with a prescription for antibiotics and cough medicine.
 {¶ 7} At approximately 5:15 that evening, Mrs. Kowalski collapsed in her kitchen from a heart attack. EMS responded and took her to Marymount Hospital, where she was pronounced dead at 6:09 p.m., having never regained a spontaneous pulse.
 {¶ 8} Dr. Elizabeth Balraj, the Coroner of Cuyahoga County, testified on behalf of the Kowalskis. Her testimony, which was based on the autopsy report, indicated that the cause of death was "coronary sclerotic heart disease with acute coronary thrombosis, and remote organizing and acute myocardial infarcts." Mrs. Kowalski had ninety-nine percent narrowing of the lumen (space or channel) of the left anterior descending coronary artery. She had a thrombus (blood clot) in the anterior descending branch of the left coronary artery and multiple areas of infarcts (area of tissue death caused by local lack of oxygen), which were acute, organizing *Page 7 
and organized healed infarcts that caused the heart to go into an arrhythmia (irregular heart beat), which resulted in her death. Sixty percent of the thrombus (blood clot) was formed within the twenty-four hours prior to Mrs. Kowalski's death. Dr. Balraj testified that it could have formed in less than an hour, or it could haven taken twenty-four hours.
 {¶ 9} Mrs. Kowalski had fifteen to twenty percent atherosclerosis (plaque) in the same artery. Atherosclerosis is the type of change that happens in the arteries as a result of cholesterol. It will cause the artery to become rough on the surface and become thicker, causing the lumen of the artery to become smaller. This is a gradual process that can take months or years. It is not fatal in and of itself. The other coronary arteries did not show any significant change.
 {¶ 10} The autopsy also revealed that there was one area of gray tissue in the interventricular septum, which is the portion of the heart muscle that divides the right side of the heart from the left side. Dr. Balraj testified that the gray tissue, which is a remote infarct, means the scar had healed and that it could have been as recent as four weeks old or it could have been years old. According to Dr. Lopez's expert, Dr. Factor, the oldest area of infarct dated back only to the period of time between four and six weeks and no earlier.
 {¶ 11} Finally, the autopsy showed no evidence of acute or chronic bronchitis. Dr. Balraj testified that if Mrs. Kowalski had acute bronchitis prior to her death and it had healed, then there would be no evidence of acute bronchitis. Only if she had *Page 8 
acute bronchitis at the time of her death would the autopsy show evidence of it.
 {¶ 12} Dr. Lopez argued that he properly treated Mrs. Kowalski for acute bronchitis in September, and that he based his diagnosis and treatment on her symptoms, her current and prior physical history, and her smoking. He was aware that her brother died at the age of thirty-two of a heart attack. He contended that during Mrs. Kowalski's visit he properly ruled out a cardiac condition. Furthermore, he argued that she did not have a cardiac condition at the time of his visit, and a cardiac workup would not have revealed any significant findings.
 {¶ 13} Dr. Alred argued that he properly ruled out a cardiac condition when Mrs. Kowalski presented to the emergency room in the morning on the day that she died. He contends that he did not deviate from the standard of care by not doing a cardiac workup.
 {¶ 14} Kowalski argued that both doctors should have done a cardiac workup (i.e., EKG, blood tests, stress test) based on his wife's presentation and her risk factors, including her family history, smoking, use of birth control pills, and weight. He contended that a cardiac workup would have confirmed that she had symptomatic and treatable coronary artery disease.
 {¶ 15} The jury found in favor of both doctors and against Kowalski. Kowalski appeals, advancing three assignments of error for our review. His first assignment of error states the following:
 {¶ 16} "The trial court erred in instructing the jury, over plaintiff's objection, that *Page 9 
there were `different methods' of diagnosing the plaintiff's decedent's medical condition when there was no evidence that more than one method is acceptable to diagnose coronary artery disease."
 {¶ 17} Kowalski argues that the trial court should not have given the "different methods" jury instruction, because the expert testimony established that the only acceptable method of definitively diagnosing coronary artery disease is a cardiac workup. Kowalski contends that this instruction misled the jury in a matter substantially affecting Kowalski's rights.
 {¶ 18} Dr. Lopez argues that there was competent, credible expert testimony sustaining the diagnostic methodology utilized by him when Mrs. Kowalski presented to his office on September 5, 2002. He argues that Mrs. Kowalski did not have any diagnosable indicia of cardiac disease or coronary artery disease when she saw Dr. Lopez. Dr. Lopez contends that the instruction was proper.
 {¶ 19} Dr. Alred argues that the instruction was proper because the trial testimony established that acceptable alternative methods of diagnosis existed for Mrs. Kowalski's condition, i.e., chest pain associated with a cough.
 {¶ 20} The trial court instructed the jury as follows:
 "Although some other physician might have used a different method of diagnosis, treatment or procedure that — than that used by Dr. Alred — Lopez and/or Dr. Alred this will not by itself without more prove that Dr. Lopez and/or Dr. Alred was negligent. The mere fact that Dr. Lopez and/or Dr. Alred used an alternative method of diagnosis, treatment or procedure is not by itself proof of negligence. You are not-you are to decide whether the diagnosis, treatment, or procedure used by Dr. *Page 10 
Lopez and/or Dr. Alred was reasonable in accordance with the standard of care required of a physician in his field of practice."
 {¶ 21} A jury instruction is proper if it correctly states the law and if it applies in light of the evidence adduced in the case. SeeMurphy v. Carrollton Mfg. Co. (1991), 61 Ohio St.3d 585, 591;Pallini v. Dankowski (1969), 17 Ohio St.2d 51, 53. In reviewing whether the evidence supports a particular jury instruction, an appellate court must "determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction." See Murphy v. Carrollton Mfg. Co., supra, citing Feterle v.Huettner (1971), 28 Ohio St.2d 54, 57. "By its terms, in medical malpractice cases, the `different methods' charge to the jury is appropriate only if there is evidence that more than one method of diagnosis or treatment is acceptable for a particular medical condition." See Pesek v. University Neurologists Assn., Inc.,2000-Ohio-483, 87 Ohio St.3d 495, 498.[2]
 {¶ 22} This instruction informs the jury that alternative methods can be used and that the selection of one method over the other is not in and of itself negligence. Pesek, supra; see, also, Clark v. Doe (1997),119 Ohio App.3d 296, 302. The instruction is grounded "on the principle that juries, with their limited medical knowledge, should not be forced to decide which of two acceptable treatments should have been performed by a defendant physician." Id., citing Dailey, The Two *Page 11 
Schools of Thought and Informed Consent Doctrines in Pennsylvania: A Model for Integration (1994), 98 Dickinson L.Rev. 713. As indicated inPesek, the instruction is appropriate when there are different methods for diagnosing or treating a particular condition. However, where the issue involved is whether the physician negligently failed to diagnose a particular disease from the observed symptoms, the instruction is misleading to the jury. In such a case, the instruction implies that even where multiple conditions may exist (bronchitis or coronary artery disease), as long as the physician followed a method for diagnosing one of the potential conditions, the doctor may be absolved of negligence. The question here is not whether the physician followed an accepted method for diagnosing bronchitis, but rather, whether the physician failed to recognize that the observed symptoms indicated the presence of a heart disease and failed to take appropriate measures to diagnose or treat that particular condition.
 {¶ 23} Accordingly, we conclude that the trial court erred when it instructed the jury that it should not find Dr. Alred/Dr. Lopez negligent if he merely made a choice between alternative methods of diagnosis. The issue in this case is not whether the doctors chose between two recognized methods of diagnosis, but whether they negligently failed to recognize that Mrs. Kowalski's symptoms required that they perform a cardiac workup to rule out coronary artery disease as a cause of those symptoms. Chest pain and coughing were the symptoms, not the diagnosis.
 {¶ 24} As eloquently stated in Miller v. Kim (1995), 191 Wis.2d 187,528 *Page 12 
N.W.2d 72, if we were "to approve the `different methods' of diagnosis instruction, there would be few `failure to diagnose' cases where the instruction would not be appropriate. Such cases invariably involve an assertion that a physician failed to recognize that an observed symptom or symptoms indicated the presence of a particular disease or injury. The question in the usual `failure to diagnose' case is whether the physician was negligent in failing to recognize the significance of the symptom or symptoms. That is because the alleged negligence lies in failing to do something, not in negligently choosing between courses of action. Doing something and doing nothing are not two methods of diagnosing a disease or injury."
 {¶ 25} We find that any question as to whether the standard of care required Dr. Lopez and/or Dr. Alred to perform a cardiac workup (i.e., EKG, blood tests, stress test) was a question of fact for the jury and that the use of the "different methods" instruction confused the jury. Thus, because the instruction "probably misled the jury in a matter substantially affecting the complaining party's substantial rights," a new trial is warranted. Becker v. Lake Cty. Mem. Hosp. W. (1990),53 Ohio St.3d 202, 208.
 {¶ 26} Kowalski's first assignment of error is sustained. His remaining assignments of error are moot.
Reversed and remanded.
It is ordered that appellant recover from appellees costs herein taxed.
 The court finds there were reasonable grounds for this appeal. *Page 13 
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY EILEEN KILBANE, J., and ANN DYKE, J., CONCUR
[1] Marymount Hospital was also named as a defendant in this case, but settled with Kowalski and was dismissed as a party prior to trial.
[2] Although this instruction has been found appropriate under the facts of certain cases, it is concerning that different methods for diagnosis, treatment and procedure are all encompassed under this one instruction rather than parceled out. *Page 1